# PAULINE GILLETTE v. HAROLD, INC., AND ANOTHER.

101 N. W. (2d) 200.

February 11, 1960—No. 37,809.

*Mahoney & Mahoney,* for relators.

*Vennum, Newhall, Ackman & Goetz,* for respondent.

MURPHY, JUSTICE.

This case comes to us on certiorari to review an order of the Industrial Commission awarding compensation to an employee under the Workmen's Compensation Act. We are asked to determine if disability resulting from aggravation of a preexisting physical infirmity is compensable under M. S. A. 176.021, subd. 1, as a personal injury under circumstances in which the preexisting physical infirmity is not causally connected with the employment but the aggravation of such infirmity is.

The employee has been employed for a period of more than 17 years as a saleslady by Harold, Inc., a ladies' ready-to-wear store. Her compensation is on a commission basis. It appears that her earnings have averaged $115 per week. She worked a full 40-hour week and was necessarily required to be on her feet standing and walking most of the time. At the time of this litigation she was 53 years of age, weighed approximately 118 pounds, and was about 5 feet 3 inches in height. It appears from the record that she became aware of a painful condition in her left foot in January 1952 as a result of a chip fracture of the "lateral cuboid bone" of her left foot. There is also reference in the record to a gout condition from which she suffered at or about this time. The latter condition apparently cleared up and there was medical testimony to the effect that it had no relation to the condition of her foot which was found to be disabling. She continued to work until May 1957 when she was informed by an orthopedic surgeon that she had a permanent disorder in her left great toe that could be helped by surgery. The condition was diagnosed as a "deteriorative disorder of the metatarsal phalangeal joint of the left great toe," which resulted in stiffness of that joint. There was no

evidence that this condition was in any way caused by her employment. About 2 months after surgery, which was calculated to alleviate the pain caused by this condition, the employee returned to work. There was medical testimony that at the time of the trial the head of the metatarsal bone and the phalange of the great toe had come together again causing a stiffening accompanied by pain. This will require further surgery. There was testimony that she would have to "quit working, or have the joint stiffened." The doctor testified that she sustained a 35-percent disability of the foot and that she would be away from work for a minimum period of 3 months. The medical testimony was that if she were to continue in her employment this additional surgery was necessary. The doctor testified, however, "I think she could keep house and not have any operation."

It appears from the record that while the underlying condition from which the employee suffers is an identifiable infirmity, the origin and cause of it is not known. It is a condition which may originate in a normal joint and "it deteriorates in a microscopic amount daily until the condition becomes severe enough to produce symptoms." The medical testimony was to the effect that the deteriorative condition progresses slowly over a period of time and "the patient doesn't come to the doctor until it hurts." There was evidence from which the commission could have found that it is not an arthritic condition, nor has the history of gout any particular bearing on it. It is a condition which occurs in men as well as women. "It does not seem related to heavy work and is not particularly common in laboring people." There was medical testimony on both sides that the continual use of the foot in bearing the weight of the employee aggravated the condition resulting from the underlying cause. There was medical testimony that such aggravation of the underlying cause was disabling.

That the disability results from the continued use of the foot in walking or standing is established by the undoubted evidence that the employee's toe became stiff and painful particularly toward the end of the workday. On the basis of the evidence submitted, the referee found—

"That in the fall of 1956, said employe noted some pain at the base of her left great toe (at the head of the metatarsal joint) particularly at the end of a work day; that the degree of said pain of the left foot continued to increase to the degree the employe, on May 3, 1957, consulted Dr. John F. Pohl who, on the 18th day of June, 1957, performed surgery at the Abbott Hospital, Minneapolis. *That said condition of the left foot was aggravated by personal injury which arose out of and in the course of her said employment.*

\* \* \* \* \*

"That as a further result of said injury, this employe has sustained a 35 per cent permanent partial disability of the left foot." (Italics supplied.)

He awarded compensation to the employee. This award was upheld on appeal to the Industrial Commission and the decision of that body is now brought before us for review.

At the outset it may be noted that we are not dealing here with an occupational disease within the meaning of § 176.011, subd. 15, which defines "occupational disease" as one which arises out of and in the course of employment "peculiar to the occupation in which the employee is engaged \* \* \*." There is nothing in the record to sustain a finding that this condition is peculiar to the occupation of a saleslady or due to causes in excess of the hazards of that employment. If the order is to be sustained, it must come within the purview of § 176.021, subd. 1, which provides:

"\* \* \* Every such employer [one subject to the provisions of the act] is liable for compensation according to the provisions of this chapter and *is liable to pay compensation in every case of personal injury* or death *of his employee arising out of and in the course of employment* without regard to the question of negligence, \* \* \*." (Italics supplied.)

We must inquire if the employee's disabling condition, which the referee and commission have found to be caused by the aggravation of the preexisting infirmity, is a "personal injury" compensable under the act.

It is the contention of the relators that a disease which in the ordinary course of work progresses so as to finally disable an employee does not become a "personal injury" under the act merely because it reaches a point of disablement during the period of employment. They argue that there is no direct causal connection between the exertion of the employment and the injury and that it occurred in the performance of usual work in the usual manner. They argue that the employee's disability here is one which merely arises contemporaneously with the employment or collateral to it and point to the language used in Senske v. Fairmont & Waseca Canning Co. 232 Minn. 350, 362, 45 N. W. (2d) 640, 649, to the effect that:

"* * * Degenerative diseases such as arteriosclerosis *which progress normally and exist independently of an accidental injury* do not constitute a preexisting disability within the meaning of the compensation act."

■ It is well recognized that a preexisting disease or infirmity of the employee does not disqualify a claim arising out of employment if the employment aggravated, accelerated, or combined with the disease or infirmity to produce disability for which compensation is sought. Common examples include hypertrophic arthritis (Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. [2d] 67; Enkel v. Northwest Airlines, Inc. 221 Minn. 532, 22 N. W. [2d] 635); cancer or malignant tumor (Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 48 N. W. [2d] 735; Erickson v. Knutson, 237 Minn. 187, 54 N. W. [2d] 118); degenerative process involving the brain (Swanson v. American Hoist & Derrick Co. 214 Minn. 323, 8 N. W. [2d] 24); paresis accelerated by injuries to the head (Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635); hernia (Balow v. Kellogg Co-op. Creamery Assn. 248 Minn. 20, 78 N. W. [2d] 430); and innumerable phases of heart difficulties, the most recent of which is Golob v. Buckingham Hotel, 244 Minn. 301, 69 N. W. (2d) 636. See, 21 Dunnell, Dig. (3 ed.) § 10397; 17 Minn. Dig., Workmen's Compensation, Key Nos. 554, 555, 556, 557.

■ The relators argue that the foregoing authorities have no appli-

cation to the facts before us. They point out that the cases holding that disability due to aggravation of preexisting infirmity is compensable apply only to those situations in which the inducing cause of disability arises from an accident in the nature of a sudden or violent event producing an injury to the physical structure of the body. They rely on Young v. Melrose Granite Co. 152 Minn. 512, 189 N. W. 426, 29 A. L. R. 506.[1] This authority loses its force, however, when it is noted that the statute as it then existed (G. S. 1913, § 8230[h]) required the inducing cause to be "an unexpected or unforeseen event, happening suddenly and violently, * * *." This definition is no longer a part of our Workmen's Compensation Act. Even before the revision of 1953 (L. 1953, c. 755) and at a time when the act provided for compensation to the employee for injury sustained by "accident," the decisions of this court had moved away from the notion that to be compensable such "accident" had to be one which grew out of "an unexpected or unforeseen event, happening suddenly and violently." In Caddy v. R. Maturi & Co. 217 Minn. 207, 212, 14 N. W. (2d) 393, 395, we said that it is immaterial whether the final disability was occasioned "by one wrench or jerk * * * or * * * at the end of a series of jars" connected with the employee's work in so far as the right to compensation therefor is concerned. In Balow v. Kellogg Co-op. Creamery Assn. 248 Minn. 20, 24, 78 N. W. (2d) 430, 433, a hernia case, we held that, although an employee may have a congenital weakness or condition favorable to the development of hernia, if an unusual strain or overexertion attendant to the employee's work induces its development, such strain or exertion is the legal cause of disability arising therefrom and is compensable. In amplifying upon the term "unusual strain or overexertion" we cited with approval authorities to the effect that it *"need not be something extraordinary but merely that required in the employee's usual tasks in connection with his work."* (Italics supplied.) In Jacobs v. Village of Buhl, 199

---

[1]See, also, Breimhorst v. Beckman, 227 Minn. 409, 35 N. W. (2d) 719, and Hiber v. City of St. Paul, 219 Minn. 87, 16 N. W. (2d) 378, which indicate that there must be a sudden extraneous event, unexpected or unforeseen, which directly produces the injury.

Minn. 572, 273 N. W. 245, we approved the rule that disability caused by strain *arising out of the employee's ordinary work* was compensable. Madden's Case, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000; Griffin's Case, 315 Mass. 71, 51 N. E. (2d) 768; Patterson Transfer Co. v. Lewis, 195 Tenn. 474, 260 S. W. (2d) 182.

■ As we have already indicated, the Workmen's Compensation Act of this state prior to 1953 provided for compensation for "personal injury * * * *caused by accident* arising out of and in the course of the employee's employment * * *." (Italics supplied.) M. S. A. 1949, § 176.02. The 1953 revision removed the "accident" requirement from the act. M. S. A. 176.021. Under the law as it now exists the employee is compensated for "personal injury" arising out of and in the course of employment. We have never before been called upon to interpret the significance of this change. The employee contends that by this revision the legislature intended to extend the coverage of the act to cases in which the employee's disability cannot be traced to an accident or to any single occurrence when the employee's usual exertion resulted in a disabling injury to him. Riesenfeld, *Contemporary Trends in Compensation for Industrial Accidents Here and Abroad,* 42 Calif. L. Rev. 531, 544. Among the authorities which support this statement is Shoren v. United States Rubber Co. (R. I.) 140 A. (2d) 768, which involved injuries to the muscles in the hand of an employee who worked as a golf ball winder. While the disability arose out of and in the course of employment, it was not an occupational disease. The Rhode Island statute provided, as does ours, for compensation for personal injury. The court there held (140 A. [2d] 770):

*"The injury which is now compensable thereunder need no longer meet the requirements of an accident."* (Italics supplied.)

That court was of the view that a gradual breakdown of a part·of the employee's body due to constant and continued use in performing duties of a particular job which caused disability is considered a personal injury. This holding is supported by Hurle's Case, 217 Mass.

223, 104 N. E. 336, L. R. A. 1916A, 279; Madden's Case, *supra;* Crowley's Case, 287 Mass. 367, 191 N. E. 668; Matter of Brancato v. John W. Cowper Co. 282 App. Div. 752, 121 N. Y. S. (2d) 813; and Slaubaugh v. Vore, 123 Ind. App. 497, 110 N. E. (2d) 299.

Section 176.011, subd. 16, defines "personal injury" as an "injury arising out of and in the course of employment and includes personal injury caused by occupational disease; * * *." It appears to us that the term "personal injury" is more inclusive and materially broader in its scope than is the term "accident" or the phrase "personal injury by accident" used in other statutes. The term "personal injury" was used in the Massachusetts act for many years, and that court has held that the term standing by itself comprehends a wide range of physical harm (Madden's Case, *supra*) and is broad enough to include any bodily injury.

The Iowa Supreme Court has held that a "personal injury" within the Workmen's Compensation Act need not arise out of an accident. In Almquist v. Shenandoah Nurseries, 218 Iowa 724, 731, 254 N. W. 35, 38, 94 A. L. R. 573, 579, the court said:

"* * * the personal injury contemplated by the statute does not include metabolism. A metabolism * * * means 'the sum of the processes concerned in the building up of protoplasm and its destruction incidental to the manifestation of vital phenomena; * * *.' The result of changes in the human body incident to the general processes of nature do not amount to a personal injury. * * *

\* \* \* \* \*

"* * * The injury to the human body * * * must be something * * * that acts extraneously to the natural processes of nature, and thereby impairs the health, overcomes, injures, interrupts, or destroys some function of the body, or otherwise damages or injures a part or all of the body."

See, also, Black v. Creston Auto Co. 225 Iowa 671, 281 N. W. 189.

The term "personal injury" is not limited to a single definite act but may extend over a continuous period of time (Smith's Case, 307 Mass. 516, 30 N. E. [2d] 536), and the term does not "exclude

an injury causally connected with the employment merely because the injury was not occasioned by physical impact or the application of some form of external violence to the body." Charon's Case, 321 Mass. 694, 696, 75 N. E. (2d) 511, 512. We said in Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 524, 48 N. W. (2d) 735, 739, that:

"* * * An injury is compensable whether it causes a disease *or merely aggravates an existing infirmity*." (Italics supplied.)

In Brzozowski's Case, 328 Mass. 113, 114, 102 N. E. (2d) 399, the court said:

"* * * 'aggravation and acceleration constitutes a personal injury within the meaning of the workmen's compensation act.' "

It is well established by the authorities that when the inevitable effects of an underlying condition are hastened by an injury that is sudden and violent or the result of unusual strain or exertion, the injury and its disabling consequences are compensable. It should further be conceded, however, that injuries may arise out of and in the course of the employment which do not occur suddenly or violently. In the course of one's ordinary duties injuries may occur daily which cause minimal damage, the cumulative effect of which in the course of time may be as injurious as a single traumatic occurrence which is completely disabling. We have been presented with no good reason why compensation should be paid in one instance and not in the other. In Golob v. Buckingham Hotel, 244 Minn. 301, 304, 69 N. W. (2d) 636, 638, we noted that:

"* * * The unusual exertion rule often has led to peculiar results in the courts. The modern trend has been away from a strict interpretation of the rule."

It is our view that these authorities warrant the conclusion that under our present statute it is no longer required that causes external to the employee himself which contribute to bring about the injury shall be in any way unusual. However, it is only when there is a direct causal connection between the employment and the injury that an award of compensation may be made, and if the injury is the proxi-

mate cause of disability for which compensation is sought, the previous physical condition of the employee is unimportant and recovery may be had for injury independent of any preexisting weakness or disease.[2] The important question is whether the employment is a proximate contributing cause of the disability. We think Pimental's Case, 235 Mass. 598, 127 N. W. 424, may be distinguished on its facts from the one before us on this basis. In that case the employee, a cigar maker, had an underlying disorder affecting the spinal nerves, which in the performance of his duties produced a neuralgic pain. After discussing the nature of his trouble as explained by medical witnesses, the court came to the conclusion that his condition could result independently of any occupation; that his difficulty was (235 Mass. 601, 127 N. E. 426) "the result of faulty posture brought about by long and laborious work, a condition which would have been equally liable to arise in whatever employment he might have been engaged, or if not employed at all." One physician pointed out that the employee's occupation involved chiefly the use of his arms and that his arms were free from trouble. There was also medical testimony to the effect that the underlying condition would proceed to the point of disablement regardless of his employment and that the same result would follow (235 Mass. 600, 127 N. E. 425) "If he sat in a chair at his home over a period of fourteen years, reading a book every day, * * *." In the case before us the disabled foot was vitally involved in the employee's occupation. The occupation accelerated the underlying injury to the point of disability. The medical testimony here was that if she had engaged in housework corrective surgery would not be necessary. While it is recognized that the employer is not the insurer of the health of his employees, he must take them as he finds them with all of the infirmities they bring to their employment, and he assumes the risk of having a preexisting condition aggravated by some injury which might not be harmful to a normal, healthy person.[3]

---

[2]99 C. J. S., Workmen's Compensation, § 170, note 64; Madden's Case, 222 Mass. 487, 111 N. E. 379, L. R. A. 1916D, 1000.

[3]Pearson v. Ford Motor Co. 186 Minn. 155, 158, 242 N. W. 721, 722.

■ Since the underlying condition from which the employee suffers is not an occupational disease, we are required to determine whether the record supports the findings of the commission that the aggravation of the disease which has produced the disability is a "personal injury" within the meaning of §§ 176.021 and 176.011, subd. 16. In discussing this point we must keep in mind that the risk for which the employer is insured is that to which the particular employee is exposed in his then condition of health and not what the risk or hazard would be upon a healthy employee.

The relators argue that the act of standing or walking, which is a part of everyday existence and is performed at home, at work, or at play, may not be considered as an occurrence which gives rise to a compensable injury. It seems to us, however, that the impairment of the ability to stand or walk is in no different category from the impairment of sight or hearing or the impairment of any other faculty of the human body. In her work as a saleslady the employee's acts of standing and walking were vital and necessary to the performance of her usual tasks. The record indicates that for at least 7 hours in each workday she was constantly on her feet and that during an average workday she walked a distance of approximately 18 miles. We think the facts in this case bring it within the definition of personal injury approved by the Iowa and Massachusetts courts. The preexisting infirmity from which she suffered was aggravated as a result of the ordinary and necessary duties which she performed. The gradual process of the physical exertion required by her work resulted in weakness and pain, the accumulated effect of which is the disability from which she suffers.

■ Moreover, it is not within our province to inquire as to the weight of the evidence supporting the commission's findings in a workmen's compensation case. The findings of the Industrial Commission should not be disturbed unless a review of the evidence and the permissible inferences drawn therefrom clearly requires reasonable minds to adopt a contrary conclusion. Schoch v. Minnesota Min. & Mfg. Co. 247 Minn. 288, 76 N. W. (2d) 801; Casey v. Northern States Power Co. 247 Minn. 295, 77 N. W. (2d) 67; Erickson v. Knutson, 237 Minn. 187,

54 N. W. (2d) 118; Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419; Westereng v. City of Morris, 205 Minn. 219, 285 N. W. 717; Shoren v. United States Rubber Co. (R. I.) 140 A. (2d) 768; 21 Dunnell, Dig. (3 ed.) § 10426.

Attorneys' fees in the sum of $250 are allowed to the respondent. Affirmed.