RUTH PARKER LARSON, SPECIAL ADMINISTRATRIX OF
ESTATE OF JOHN PARKER, v. DAVIDSON-BOUTELL
COMPANY AND ANOTHER.

102 N. W. (2d) 712.

April 29, 1960—No. 37,905.

*George C. Stetson,* for relator.
*Scholle & Schweiger,* for respondents.

NELSON, JUSTICE.

Certiorari to review a decision of the Industrial Commission that the disability of employee subsequent to January 8, 1958, was not due to injury sustained in a compensable accident on July 23, 1957.

The employee, John Parker, sustained a personal injury while in the course of his employment with Davidson-Boutell Company of Minneapolis on July 23, 1957. He was engaged with other employees in carrying rolls of carpets which the employer had furnished for an exhibit at the Armory in Minneapolis. Employee fell on the smooth Armory floor while so engaged sustaining a skull fracture and concussion. The accident occurred between 5 and 6 p. m. He was taken to General Hospital immediately after the injury in an unconscious state and he remained in the hospital for several days.

The Industrial Commission found that as a result of said personal injury employee was temporarily totally disabled from July 23, 1957, to January 8, 1958, and that any disability subsequent to that date was due to natural causes or disease and was not related to the injury of July 23, 1957, either by causation or aggravation. The employee was awarded medical and hospital expenses totaling $313.40 and compensation of $1,008.41 for the period for which he was found to have been disabled due to the injury.

The question involved is whether the evidence supports the finding of the Industrial Commission that employee's disability after January 8, 1958, was not causally related to the accident.

The record indicates that Dr. John M. Feeney, a specialist in general and industrial surgery, and Dr. Harold H. Noran, a specialist in neurology and psychiatry, but primarily in neurology, had examined and treated the employee following the injury and both testified in his behalf at the hearing. Dr. Feeney had seen and treated him about 10 times, the first visit to his office being made on October 30, 1957. The record indicates, according to history taken and employee's testimony, that he had blacked out approximately eight times since leaving Gen-

eral Hospital following the injury, and that these blackouts were associated with some form of convulsion. Dr. Feeney took X-rays and gave his opinion that when employee fell on the floor he sustained a skull fracture and that the blackouts and convulsions were directly related to the injury.

Dr. Feeney referred employee to Dr. Noran who first examined him on December 12, 1957. Employee in giving his history to the doctors and in his testimony before the referee maintained that he did not fall from suffering a spell; that he slipped and fell. Dr. Noran made a complete examination and came to the conclusion that employee had a post traumatic convulsive disorder which could have been due to the head injury suffered July 23, 1957, and that even though he had suffered one convulsion prior to the injury their frequency thereafter would at least indicate an aggravation if not the first cause. His testimony indicates that employee actually became unemployable because of his numerous blackouts and convulsions due to the injury and the danger that he might be injured in undertaking the work which he had been accustomed to do. Dr. Noran was strongly of the opinion that, if the history as to his head injury was correct and that he had numerous convulsions thereafter, that would constitute a very strong connection; and that if he had had similar blackouts, only rarely, before the injury it would constitute an aggravation.

Dr. Andrew J. Leemhuis, who is a practicing physician and surgeon specializing in neurology and psychiatry, appeared as an expert witness in behalf of the employer. He had examined the employee once on January 9, 1958. Dr. Leemhuis gave an opinion based upon a hypothetical question, which in part included testimony as to at least six arrests and convictions for drunkenness on the part of employee and that 2 months prior to July 23, 1957, employee suffered a blackout while drunk, stating:

"My opinion is that at the time of the accident the patient had a seizure wherein he became unconscious, fell to the floor, and had a convulsion or a seizure which from the history I would believe on the basis of chronic alcoholism."

There is some indication from his testimony that he based it in part on certain entries in the hospital records and upon a history taken and consultations had with his partner. Employee's counsel in his brief objects to Dr. Leemhuis' testimony on the grounds of hearsay and cites the rule stated in Briggs v. Chicago G. W. Ry. Co. 248 Minn. 418, 80 N. W. (2d) 625, that a qualified expert witness is not permitted to base his opinion upon the opinion of another expert witness, or upon the observations of fact reported by another expert witness, unless such observed facts are included in a hypothesis to be supported by other evidence as to their truth. He also cites Ipsen v. Ruess, 239 Iowa 1376, 35 N. W. (2d) 82.

There is no evidence in the record that the employee was intoxicated on the date of his injury.

Employee contended that the form of the hypothetical question rendered it incompetent, that it did not contain all the evidence, merely relating the testimony of the employer's foreman and not that of the other witness who was present when he fell. However, he did not enter an objection on the grounds of hearsay.

 M. S. A. 176.021, subd. 1, of the Workmen's Compensation Act provides:

"Except as excluded by this chapter all employers and employees are subject to the provisions of this chapter. Every such employer is liable for compensation according to the provisions of this chapter and is liable to pay compensation in every case of personal injury or death of his employee arising out of and in the course of employment without regard to the question of negligence, unless the injury or death was intentionally self-inflicted *or when the intoxication of the employee is the proximate cause of the injury*. The burden of proof of that fact is upon the employer." (Italics supplied.)

This court in Gillette v. Harold, Inc. 257 Minn. 313, 319, 101 N. W. (2d) 200, 205, recently said in considering this section:

"* * * Under the law as it now exists the employee is compensated for 'personal injury' arising out of and in the course of employment. We have never before been called upon to interpret the significance of this change."

After referring to the holding in Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 524, 48 N. W. (2d) 735, 739, that:

"* * * An injury is compensable whether it causes a disease *or merely aggravates an existing infirmity*" (italics supplied),

and to Brzozowski's Case, 328 Mass. 113, 114, 102 N. E. (2d) 399, where that court said:

"* * * 'aggravation and acceleration constitutes a personal injury within the meaning of the workmen's compensation act,' "

this court stated its view that (257 Minn. 321, 101 N. W. [2d] 206):

"* * * these authorities warrant the conclusion that under our present statute it is no longer required that causes external to the employee himself which contribute to bring about the injury shall be in any way unusual. However, it is only when there is a direct causal connection between the employment and the injury that an award of compensation may be made, and if the injury is the proximate cause of disability for which compensation is sought, the previous physical condition of the employee is unimportant and recovery may be had for injury independent of any preexisting weakness or disease. The important question is whether the employment is a proximate contributing cause of the disability. * * * While it is recognized that the employer is not the insurer of the health of his employees, he must take them as he finds them with all of the infirmities they bring to their employment, and he assumes the risk of having a preexisting condition aggravated by some injury which might not be harmful to a normal, healthy person."

The court concluded that (257 Minn. 313, 101 N. W. [2d] 202):

"Where a preexisting infirmity from which an employee suffered was aggravated as a result of the ordinary and necessary duties of the employment, the disability resulting from such aggravation is compensable as a personal injury under § 176.021."

When the instant case was heard before this court it was learned that the employee died on December 13, 1959, at the Minneapolis workhouse and that an autopsy was performed by pathologists Dr. John Popowich and Dr. Mari. A copy of that report was tendered to the

court and to counsel for the employer, and no objection thereto was made. That it might be given consideration was assented to in oral argument before this court.

Section 176.155, subd. 4, of the Workmen's Compensation Act provides:

"In all death claims where the cause of death is obscure or disputed any interested party may request an autopsy and, if denied, the commission, upon petition and proper showing, shall order an autopsy. If any dependent claiming compensation or benefits does not consent to such autopsy within the time fixed by the commission in its order, all dependents shall forfeit all rights to compensation. The party demanding an autopsy shall bear the cost thereof."

Section 176.481 provides:

"On review upon certiorari under this chapter, the supreme court has original jurisdiction. It may reverse, affirm, or modify the order allowing or disallowing compensation and enter such judgment as it deems just and proper. Where necessary the supreme court may remand the cause to the commission for a new hearing or for further proceedings with such directions as the court deems proper."

We think it clear from the record as a whole that the denial of any compensation after January 8, 1958, was based to a large extent on the claim that employee was suffering from chronic alcoholism and that this was the cause of his later blackouts and convulsions. An autopsy report being now available, we are of the opinion that the issues in this case are of sufficient importance so that it ought to be remanded for rehearing and additional testimony taken to include the autopsy report and such expert testimony in connection therewith as may seem proper to the commission.

Remanded.

MR. JUSTICE LOEVINGER, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.