SHIRLEY MEYERS v. ELECTRO-STATIC
FINISHING, INC., AND ANOTHER.

230 N. W. 2d 24.

April 18, 1975—No. 44771.

*Mahoney, Dougherty & Mahoney, Richard P. Mahoney,* and *Kenneth P. Gleason,* for relator.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne, O. C. Adamson II,* and *Carlyn D. Knudson,* for respondents.

Heard before Otis, Peterson, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Employee-relator seeks review of a decision of the Workmen's Compensation Commission denying her compensation on the basis that she did not sustain a personal injury which aggravated a preexisting condition. The commission found that employee "suffered a manifestation of continuing symptoms" of an injury occurring 4 years earlier in an automobile accident completely unrelated to her employment. We reverse.

In May of 1968, employee was involved in an automobile accident which resulted in loss of work for 1 week. She was able to return to her employment, but was forced to leave in September 1968, for medical reasons unrelated to the accident. Settlement of the personal injury claim arising out of the accident occurred in March 1972.

On August 17, 1972, employee commenced employment with respondent, working the second shift. Her job essentially involved the packing of finished products to be sent to companies ordering them. Specifically, she would take a finished product off a conveyor belt, wrap it and box it, and put it on a skid which was taken to the back room from which the products were shipped. The articles varied in volume and weight up to a maximum of approximately 20 pounds. Employee stated that the work was basically light and that she was able to complete it without any trouble or "bother."

A special order came in for doors which employee described as awkward and weighing about 20 pounds. Initially, she was not required to do any pushing, pulling, or lifting, but rather was required to guide the finished doors through an opening near the conveyor. Later on the same day she did lift various doors into packing crates. The entire procedure involved twisting, turning, lifting, pushing, and pulling. The next day, employee apparently experienced headaches and pain in her neck and back. Despite this, she did report to work that day and did other packing which was not as strenuous. She has not reported to work since then. Her claimed work-related injury manifested itself initially in her upper back, through the right shoulder, and down to the finger tips. This incident took place approximately 2 weeks after she commenced employment with respondent.

The issue presented is whether the commission was correct in finding: "That the employee did not sustain a personal injury on said date nor at any other time pertinent hereto, which can be said to have aggravated a pre-existing condition into continuing difficulty."

This case presents a very novel factual situation. A portion of the medical testimony of several of the physicians related back to the time of the automobile accident in 1968. Dr. Lumir C. Proshek indicated that he consulted with employee on January 4, 1971, December 6, 1971, and on March 6, 1972. During those examinations, employee's symptoms were basically similar, with concentrated pain in the thoracic lumbar area and the posterior neck, and complaints of rather constant occipital headaches. The doctor testified that as late as March 6, 1972, the employee had complained of the same problems, which allegedly were aggravated by her employment in August of 1972. Dr. Proshek concluded that Mrs. Meyers suffered from a "[p]rimarily extension flexion injury with subsequent development of cervical disc disease with radiculitis and headaches." The employee's testimony was that the pain and numbness disappeared in March 1972, shortly after her settlement of the automobile accident

case, and then returned a mere 2 weeks after commencing employment with respondent.

Dr. Meyer Z. Goldner who examined employee on December 20, 1971, after viewing and hearing of similar symptoms as those recorded by Dr. Proshek, concluded: "Her symptoms have persisted now in varying degrees of intensity for over three and a half years and I believe are of a permanent nature."

Dr. Robert A. Wengler, an associate of Dr. Goldner, had occasion to examine employee at Mt. Sinai Hospital on September 27, 1972. At that time she told the doctor that she had thrown "her neck and back out" on August 30, 1972, at respondent's plant. Dr. Wengler also noted the presence of symptoms similar to those exhibited on other occasions, as stated above, including neck pain radiating into her right arm. Based upon a hypothetical question, Dr. Wengler concluded that "the event of August 30, 1972 precipitated acute recurring disc syndrome and necessitated the hospitalization and current lay-off of her work activity." When questioned as to whether this event would have been a substantial factor in her present condition, Dr. Wengler responded that it was a "significant aggravation of the underlying problem that she had prior to this."

Dr. Thomas H. Comfort, an orthopedic surgeon, examined employee at the request of the employer on November 30, 1972. He testified that it was medically reasonable to assume that there might have been an aggravation of her condition as a result of her work activities in August. However, he held the opinion to a reasonable degree of medical certainty that she had a 20-percent permanent partial disability, but that "none of that permanency was a result of the work activity at Electro-Static."

Therefore, both the factual and medical evidence evolve only into a question of temporary total disability and not permanent partial disability. Without doubt, the medical evidence supports, and employee concedes, that the permanent partial disability exhibited at the present time was present before her employment

with respondent. The only question then to resolve is whether there was an aggravation of the preexisting condition.

The compensation judge found that the employee "sustained a personal injury to the cervical neck, consisting of an aggravation of a pre-existing cervical spine condition arising out of and in the course of her employment." Apart from the distinctly opposite memoranda accompanying the findings of the judge and the commission, the only difference in their findings is in the area of causation of aggravation of the preexisting condition.

Respondent challenges employee's credibility by stressing the fact that she did not report any injury until September 19, but rather called twice between August 31 and September 19 to explain her absence, the first time because she had car trouble and the second time because she was ill. Respondent also questions employee's testimony concerning the fact that her previous physical difficulties completely vanished after the settlement of her automobile accident claim in March. These matters were explored during cross-examination, and employee explained that she feared that because of her preexisting condition respondent would dismiss her if she gave the true reason for being absent and that she believed that her condition would rectify itself. Respondent further asserts that employee's statement to Dr. Wengler that she "threw her neck and back out" lacks specific factual support to establish that any injury occurred at work. Concerning this statement, employee insists that she did incur these injuries at work. The nature of this evidence dwindles in importance because the record discloses no evidence of incidents other than her employment which could cause this aggravation.

The parties are therefore in basic agreement as to the facts. The evidence indicates that when the employee commenced work on August 17, 1972, she had no physical problems. When she was first examined by Dr. Wengler on September 27, 1972, she had "acute neck tenderness with a marked spasm of the neck muscles and limited motion." She was immediately hospitalized and remained at Mt. Sinai Hospital from September 27 through Octo-

ber 12. We therefore must conclude that some event precipitated her changed condition. From the evidence before us, it appears only logical to conclude that her work was the aggravation. To support the commission's findings, we would have to conclude that her physical condition, present in March 1972, had never changed. This is directly contrary to her testimony which is supported by the testimony of a fellow employee, and commonsense itself. Any other finding would raise serious doubts as to her ability to perform her employment obligations during the 2-week period prior to her sustaining the injury producing the condition diagnosed by Dr. Wengler on September 27.

We agree very strongly here that no permanent partial disability can in any way be attributable to respondent. This does not prevent this court from arriving at the only logical conclusion, that is, that the employee's work caused an aggravation of a preexisting condition and the employer is therefore liable for the temporary total disability involved. We therefore conclude that the commission's finding that the employee "suffered a manifestation of continuing symptoms" is contrary to the evidence. The commission admits this is a close question, and may have been swayed by the equity involved in holding in favor of an employer for an aggravation of a preexisting condition when the permanent partial disability is the same now as before her employment, and when her total employment with this employer lasted less than 2 weeks. We could not accept such reasoning, nor are we persuaded by what may have happened. Our decision must be based upon the evidence contained in the record before us, which is contrary to the conclusion that this aggravation came on spontaneously.

It is a well-accepted rule that an employer must take the employee as he finds him, with any existing infirmities. Gillette v. Harold, Inc. 257 Minn. 313, 101 N. W. 2d 200 (1960); Larson v. Davidson-Boutell Co. 258 Minn. 64, 102 N. W. 2d 712 (1960). The record fails to exhibit any effort on the part of respondent

herein to make any inquiry to determine the physical condition of employee prior to the commencement of the employment period.

This court stated in Gillette (257 Minn. 321, 101 N. W. 2d 206):

"It is well established by the authorities that when the inevitable effects of an underlying condition are hastened by an injury that is sudden and violent or the result of unusual strain or exertion, the injury and its disabling consequences are compensable. It should further be conceded, however, that injuries may arise out of and in the course of the employment which do not occur suddenly or violently. In the course of one's ordinary duties injuries may occur daily which cause minimal damage, the cumulative effect of which in the course of time may be as injurious as a single traumatic occurrence which is completely disabling. We have been presented with no good reason why compensation should be paid in one instance and not in the other."

Further, in the case of Forseen v. Tire Retread Co. Inc. 271 Minn. 399, 403, 136 N. W. 2d 75, 77 (1965), this court said:

"* * * It is thus clear that an employee may receive benefits upon disablement if his work activities aggravated his infirmity, even if they did not do so because of some unusual or violent strain or exertion. But, as we said in the Gillette case, '[t]he important question is whether the employment is a proximate contributing cause of the disability.'"

We therefore hold, under the principles espoused in these decisions, that employee did sustain a personal injury to the cervical neck consisting of an aggravation of a preexisting condition arising out of and in the course of her employment. The case is therefore reversed and remanded to the commission for the determination of the termination date of the temporary total disability.

Attorneys fees of $400 are allowed.

Reversed and remanded.

SHERAN, CHIEF JUSTICE (concurring).

I adhere to the rule that the findings of the commission should be sustained if supported by the evidence but believe the evidence in this case compels a finding of a work-related aggravation of a preexisting ailment.

ROGOSHESKE, JUSTICE (concurring).

I concur in the conclusion expressed by Mr. Chief Justice Sheran.

MACLAUGHLIN, JUSTICE (concurring).

I concur in the opinion of Mr. Chief Justice Sheran.

PETERSON, JUSTICE (dissenting).

The court, by the majority opinion, departs from longstanding practice of deference to the role of the Workmen's Compensation Commission in finding facts, and embarks on a course of weighing for itself the credibility and weight of both lay and expert testimony and substituting its findings of fact for those of the commission.

The court holds that, as a matter of its own exercise of "commonsense," it cannot be doubted that relator sustained a work-related aggravation of a preexisting physical infirmity. We should consider, therefore, the evidence supportive of the commission's findings.

It is clear that on May 23, 1968—4 years before she took employment with respondent employer on August 17, 1972—relator sustained a permanent partial disability of her back in an automobile accident. She continued to suffer persistent pain and stiffness in her neck and back, headaches, and numbness in her hands at least to the time she settled her claim with respect to that accident on March 17, 1972, 5 months prior to taking this employment. Her present complaints, as hereafter noted, are similar, if not, indeed, the same as they were at that time.

Relator took employment with respondent-employer on August 17, 1972, and claims that she reinjured herself on August 30, 1972, while working on employer's production line. The com-

mission stated that she "did some degree of heavy work in the handling of the doors on August 29, 1972," but at that time "she noted no immediate untoward event." She continued at work for 2 days, but not thereafter. It is actually far from clear in her testimony either as to which of 2 possible days the asserted injury occurred or what kind of materials she was handling at the time; and it is not clear from her testimony whether it was on the next morning, or the day following, that she awoke feeling "that trouble in [her] neck and ached all over." The majority opinion states that the commission finding "is directly contrary to [relator's] testimony, supported by that of a fellow employee." My reading of the transcript discloses no testimony of a fellow employee directly supporting relator's claim and, in any event, it is for the commission to determine the credibility and weight of such testimony.

It was not until September 19, 1972—approximately 3 weeks later—that relator reported that she had been injured at work. Her physical complaints since then have consisted of the following: pain in the left side of the neck; pain radiating over the top of her head, giving her headaches and affecting her left eye; pain in her upper back and into her right arm, causing a tingling in the little, ring, and middle fingers of her right hand; numbness and tingling in her left arm, with a tendency for her left hand to fall asleep. These complaints are strikingly similar to those stated in the deposition of Dr. Lumir C. Proshek, who treated relator in connection with her prior automobile accident:

"* * * [H]er chief complaints were that she tended to have persistent symptoms of pain and stiffness in her neck and on both sides, the back of her neck and in the midline. To a slight degree, they are continuous and aggravated by such activities as driving, ironing, scrubbing floors or watching television to excess. Associated with exacerbation of these symptoms she then gets generalized headaches and pains in her eyes. She also has episodes of aching pain and stiffness through the mid thoracic spine area. There is no special cause for it, and it is relieved

usually by extending the spine. She also gets episodes of numbness involving the entire left hand on occasion, usually one or more times a day, and it occurs over a brief period of time while sitting, disappears after she rubs her hand. She has also noted that her left elbow tends to stiffen up on occasion each day."

Dr. Proshek had diagnosed her condition as "[p]rimarily extension flexion injury with subsequent development of cervical disc disease with radiculitis and headaches."

Relator consulted her family physician, Dr. A. M. Hall, on September 26, 1972. He stated that it was undetermined whether her complaints were caused, aggravated, or accelerated by her employment activity but advised that "if she continued to have trouble with this and was making a case of it she should go to a specialist * * *." She thereafter consulted Dr. Robert A. Wengler, who testified to his opinion that her employment precipitated an acute recurring disc syndrome.

The opinion testimony of Dr. Thomas H. Comfort, giving expert testimony on behalf of the employer, is of more immediate relevance in the context of the commission's finding adverse to relator and this court's contrary finding. Upon a hypothetical question, which included relator's version concerning the onset of her complaints, he was asked his opinion as to whether the relator had suffered an injury or a flareup of her condition. His answer was:

"I can't be as precise, but there is a *possibility* that she had an aggravation of her symptoms as a result of the particular work she was doing." (Italics supplied.)

He had not, however, regarded the history given him by relator as entirely candid. Although he considered it medically reasonable to assume that there was a temporary aggravation of her condition as a result of the assumed work activities, it was his opinion that "the kind of work that was described could not have aggravated for longer than a few days or a week."

The court's opinion, of course, assesses the evidence differently than does the commission. The commission's assessment is expressed in the memorandum of Commissioner James Pomush:

"* * * [I]t is difficult to believe that all of these difficulties completely vanished on March 6, 1972, the date of the settlement and her remarriage. Surely these important helpful events, as she indicated, gave her a feeling of well being and gave her help in her family affairs. And very much to her credit, she pursued the opportunity of employment. However, although she did some degree of heavy work in the handling of the doors on August 29, 1972, she noted no immediate untoward event. Needless to say, after such a long layoff of work and in light of her pre-existing difficulties, any work or activity of some substance would create a certain amount of aggravation. Unfortunately, her symptoms again mainfested themselves sometime during the following days. The testimony of labor and activity was revelatory of her inability at that time to be other than sedentary. As Dr. Comfort stated:

'It's not medically unreasonable to make the attempt, so we usually tell people it will take a year or two years to learn what they can or can't do and they will have to test themselves out.'

"Thus, under the circumstances of this case, we cannot state the employee suffered a personal injury which aggravated a preexisting condition into continuing difficulty."

A recital of three relatively recent decisions of this court will demonstrate the extent to which today's decision works a significant departure from precedent in workmen's compensation cases. These are: Gillette v. Harold, Inc. 257 Minn. 313, 101 N. W. 2d 200 (1960); Fisher v. Red & White Taxi Co. 270 Minn. 317, 133 N. W. 2d 543 (1965); and Forseen v. Tire Retread Co. Inc. 271 Minn. 399, 136 N. W. 2d 75 (1965). The settled law established in these cases is that disability resulting from aggravation of a physical infirmity is compensable under the Workmen's Compensation Act even where the preexisting infirmity is not causal-

ly connected with the employment but where the aggravation is nevertheless work related. The common element of these cases, despite differing results, is that it is for the commission to determine whether a claimed aggravation is, as a matter of fact, work related.

The factual issue in Gillette involved an employee who had been employed by the relator-employer for 17 years as a clothing saleslady whose duties necessarily required her to be on her feet, either standing or walking most of the time, aggregating a distance of approximately 18 miles per day. Some years prior to her compensation claim, she had become aware of a painful condition in her left foot, resulting from a chip fracture, which ultimately led to surgery to alleviate what was diagnosed as a "deteriorative disorder of the metatarsal phalangeal joint of the left great toe." Although there was no evidence that this underlying condition was in any way caused by her employment, there was medical testimony that the continual use of the foot in bearing the weight of the employee aggravated that condition and caused disablement.[1] Affirming the commission's award of compensation, we said (257 Minn. 323, 101 N. W. 2d 207):

"* * * The preexisting infirmity from which she suffered was aggravated as a result of the ordinary and necessary duties which she performed. The gradual process of the physical exertion required by her work resulted in weakness and pain, the accumulated effect of which is the disability from which she suffers.

"Moreover, it is not within our province to inquire as to the weight of the evidence supporting the commission's findings in a workmen's compensation case. The findings of the [Workmen's Compensation Commission] should not be disturbed unless a re-

[1] The commission in the instant case factually distinguished Gillette v. Harold, Inc. 257 Minn. 313, 101 N. W. 2d 200 (1960), as a case where "the symptoms were not revelatory of nor a manifestation of a continuing condition, but rather an aggravation of a pre-existing skeletal defect by a substantial work condition which created a new physical difficulty."

view of the evidence and the permissible inferences drawn therefrom clearly requires reasonable minds to adopt a contrary conclusion."

This court, on the other hand, affirmed the commission's denial of compensation in Fisher v. Red & White Taxi Co. *supra*. Relator-employee was employed as a cabdriver from 1952 to the latter part of 1961. There, as here, the employee had suffered a neck injury in an unrelated automobile accident, an injury which caused pain in the arm, neck, elbow, and shoulder blade areas; he did not suffer any pain in the lower back area at that time. The employee thereafter claimed a compensable injury to his back, allegedly caused by the rotation and twisting of his spine while entering and alighting from the cab and performing other functions as a cabdriver. He claimed that he began to suffer a pain in his lower back on September 11, 1961, and on September 23, he told the dispatcher that "my back is just aching and killing me, I can't take it, can't sit in the cab, I'm so sore." There, as here, there was no evidence of trauma or violent force prior to the onset of these aches and pains. The employee's physician was the only medical witness, and he testified that the low back pain was the result of a new injury and not related to the prior automobile accident. He testifed that the residual difficulty that the employee had was the result of the incident, "whatever it was," that occurred in September 1961 and that, although a person had a degenerative disc condition, the fact that he was sitting driving a taxicab for long periods of time could cause a final disc rupture. Affirming the commission's finding, which involved a weighing of the expert medical testimony, we said (270 Minn. 325, 133 N. W. 2d 548):

"It is our opinion that the evidentiary differences between Gillette and this case were fact questions for the commission and that it was within its authority, under the evidence here, in concluding that there was a lack of evidence of weight that relator's

employment or any more than his other daily living caused, the ultimate rupture of his disc and resultant disability.

"We have repeatedly held that the commission's determination of fact questions will not be disturbed on appeal unless it is manifestly contrary to the evidence. * * * We cannot say that the record in this case does not contain support for the commission's decision. The duty of weighing the testimony and drawing the proper inferences therefrom was that of the commission. It is apparent that this was done and that the commission concluded that positive proof of causal connection was lacking. Under those circumstances, this court cannot substitute its judgment for that of the commission."

Forseen v. Tire Retread Co. Inc. 271 Minn. 399, 136 N. W. 2d 75, is primarily significant for its reliance on both Gillette and Fisher as authority for affirming the commission's award of compensation. There, unlike both Gillette and Fisher—and the case at hand—the employee had no prior history of disabling incident. He was employed at tasks involving the lifting and pushing of heavy-duty diesel tires, but had never experienced any trouble with his back. On the date of the alleged injury-producing incident, the employee felt no strain and experienced no pain, but awoke with pain in his lower back. He reported to work the next day and continued his work even though he continued to have pain. The expert medical witness, who had performed a laminectomy for the employee and who testified on his behalf, concluded that the employee had a progressively degenerative disease of the lumbar discs. The medical expert for the employer-insurer similarly gave his opinion that the employee was "the victim of a progressive degenerative condition involving the discs of the spine," and concluded that his disability was not due to trauma but possibly, although not to a medical certainty, "due to a hereditary factor." A divided commission determined that the employee's heavy labor for a period of time prior to the stated incident accelerated or aggravated a preexisting

condition. Affirming the decision of the commission, we said (271 Minn. 402, 136 N. W. 2d 77):

"We think that this case is directly controlled by Gillette. * * *

"It is thus clear that an employee may receive benefits upon disablement if his work activities aggravated his infirmity, even if they did not do so because of some unusual or violent strain or exertion. But, as we said in the Gillette case, '[t]he important question is whether the employment is a proximate contributing cause of the disability.' 257 Minn. 322, 101 N. W. 2d 206.

"Keeping in mind that we will not disturb the findings of the [Workmen's Compensation Commission] unless manifestly contrary to the evidence, we find sufficient evidence here to support a conclusion that employment contributed to the disablement. It is uncontradicted that the employee was compelled to move, push, and shove heavy tires in the normal course of his work. * * *

* * * * *

"The weight of this testimony, and the absence of any evidence tending to show any other external causes of deterioration, support the commission's determination and award of compensation.

"* * * In accord with Fisher v. Red & White Taxi Co. 270 Minn. 317, 133 N. W. 2d 543, where we upheld a denial of benefits based upon the commission's determination of a parallel fact issue in favor of the employer-insurer, we must decline to disturb the award."

The commission in the instant case found that, during her employment with this employer, relator "did not sustain a personal injury * * * which can be said to have aggravated a pre-existing condition into continuing difficulty" and that, instead, she "suffered a manifestation of continuing symptoms related to her non-employment auto accident of 1968." Whether or not it may be considered to be a close issue of fact, the commission made a permissible finding, and I would not disturb that finding.

OTIS, JUSTICE (dissenting).

I join in the dissenting opinion of Mr. Justice Peterson.

KELLY, JUSTICE (dissenting).

I would favor reversing the decision of the commission but would remand this case to the commission for further proceedings.

The memorandum of Commissioner Pomush states that there was a "certain amount of aggravation" of this employee's preexisting condition. That memorandum also points out that she did "some degree of heavy work," that any work of substance would create aggravation, that the history revealed her inability at that time to be other than sedentary. While he concluded that the commission could not state that the employee suffered a personal injury which aggravated a preexisting condition, this conclusion does not square with his statement that there was an aggravation. The aggravation itself was of course a personal injury. While it may seem fundamentally unfair to saddle an employer with an aggravation to a preexisting condition where that condition was such that the employee could not do any work of substance and was unable "to be other than sedentary," the law does permit a recovery for such an aggravation. However, if the commission did not believe this employee's testimony, and there is some intimation of that in Commissioner Pomush's memorandum, then we should possibly affirm. In this case the symptoms complained of by the employee were the same as those sustained previously in an automobile accident. If the symptoms from that accident in reality had not subsided and in fact the symptoms claimed in this case were merely a continuation of the old symptoms, obviously the commission decision is a correct one. This is essentially finding IV by the commission! The memorandum of Commissioner Pomush in referring to the symptoms caused by the auto accident stated— "* * * [I]t is difficult to believe that all of these difficulties completely vanished on March 6, 1972, the date of the settlement and her remarriage." The

memorandum also pointed out that the employee, in doing her work, "noted no immediate untoward event."

The problem in this case is that we do not know whether the commission erred by concluding that although there was an aggravation, it was not a personal injury caused by her work; or whether it concluded that in reality there was no aggravation but the symptoms related to her nonemployment auto accident.

Both the compensation judge and the commission indicate by their memoranda that this is a close case. The compensation judge stated:

"Considering the employee's previous complaints after the automobile accident in 1968, it is difficult to determine the extent of the aggravation to the spine of August 29, 1972. It is also difficult to believe that the pain and discomfort complained of for 4 years left completely [in] March 1972."

I would remand the case for further proceedings by the commission that would clarify the seeming inconsistencies between finding IV by the commission and the statement in the memorandum that there was an aggravation but no personal injury during her employment.

MR. JUSTICE KNUTSON took no part in the consideration or decision of this case.