Richard H. NEWCOMB, Relator,

v.

RICHFIELD YARDS, INC., Relator,

v.

J–D'S BAR, INC., Respondent,

Allied Mutual Insurance Company, Relator,

and

Northwestern National Insurance Group, Respondent,

and

Reliance Insurance Company, Respondent.

Nos. 46987 and 47012.

Supreme Court of Minnesota.

April 22, 1977.

Freeman, Gill, Stephan, Egan & Keating, and Gerald R. Freeman, Minneapolis, for Newcomb.

Sahr, Kunert & Tambornino, and John L. Tambornino, Minneapolis, for Richfield Yards and Allied Mut. Ins. Co.

Fitch & Johnson, and Victor C. Johnson, Minneapolis, for Richfield.

C. Douglas Allert, Minneapolis, for J–D's Bar and Reliance Ins. Co.

Fitch & Johnson and Victor C. Johnson, Minneapolis, for N. W. Nat'l Ins.

PER CURIAM.

Certiorari on the relation of employee, Richard H. Newcomb, and of Richfield Yards, Inc., and Allied Mutual Insurance Company to review a decision of the Worker's Compensation Court of Appeals. The principal issue raised is whether there is sufficient evidence to support findings of the compensation court that employee's work activities between July 19, 1968, and June 4, 1974, did not contribute to employee's disability and instead caused merely temporary aggravations of symptomatic spondylolisthesis. Our review of the evidence convinces us that these findings do not have substantial evidentiary support and cannot stand.

On August 1, 1963, and August 9, 1967, while working for Richfield, employee sus-

tained injuries to his back, both diagnosed as aggravations of a spondylolisthesis of which he had been unaware before the 1963 incident. Findings that these aggravations were personal injuries arising out of and in the course of employment are not challenged. Both injuries disabled employee for short periods of time and he had considerable pain and discomfort after returning to work. His job as an insulator required him to stand on ladders and use an overhead drill when working on completed buildings. The standing and drilling became intolerable after the 1967 injury, and employee worked only in new houses in the next several years in order to avoid those activities. The work still required him to climb into attics, to pull a hose into them, and to do much of his work in a bent position. His back and right leg would become painful by the end of the workday and, as time went on, by the middle of the day. On June 1, 1972, he quit this work because he thought the general underlying condition of his back was becoming steadily worse.

Employee and a brother-in-law bought a liquor store about this time, forming a corporation under the name of J–D's Bar, Inc., to operate it. Employee began work as a bartender at the store but soon found this work also produced back pain. He worked 8- or 10-hour shifts and was required to do some lifting and bending and to stand almost constantly. By the end of a shift his back would become painful. As time went on, he noticed more severe pain earlier in the day and sometimes would have pain when he got up the next day. The pain became so great that on occasion he had to hire others to do his work. On June 4, 1974, he underwent a laminectomy. He attempted to return to his job in August or September but still had pain and could not tolerate standing. At the time of the compensation hearing he planned to undergo further surgery.

Both Dr. Elmer Salovich, the orthopedic surgeon who performed the laminectomy, and Dr. David W. Florence, an orthopedic surgeon who was a witness for Richfield and respondent Northwestern National In-

surance Group, Richfield's insurer after July 19, 1968, said that employee was temporarily totally disabled and that his work activities were in effect continual trauma which contributed to his disability. The surgeons differed on apportionment of responsibility—Dr. Salovich expressed the opinion that the 1963 and 1967 injuries and the work activities for Richfield thereafter until June 1, 1972, and for J–D's Bar from June 1972 until June 1974 each contributed 25 percent to cause employee's disability, while Dr. Florence thought that responsibility should be apportioned two-thirds to the first injury, one-ninth to the 1967 injury, and one-ninth each to the subsequent work periods—but they agreed that the employment activities during the periods in question were causal contributory factors in employee's disability.

On this evidence the compensation judge found that employee sustained a personal injury in the course of his employment by Richfield between July 19, 1968, and June 1, 1972, and sustained another in the course of his employment as a bartender between August 1, 1972, and November 1, 1974, both injuries being aggravations of his preexisting back condition. The judge found that employee had been temporarily totally disabled since November 1, 1974, and apportioned responsibility for employee's temporary total disability equally among the 1963 and 1967 injuries and the subsequent ones.

On appeal by Richfield and Allied and by J–D's Bar and its insurer, the compensation court determined that employee's disability commenced June 4, 1974, the date of his surgery, and also found that his work activities for both employers from July 19, 1968, to June 4, 1974, had not resulted in compensable injury but had caused only temporary aggravations of his underlying condition.

■ While the record supports the compensation court's determination that employee's disability commenced June 4, 1974, its findings that employee's work activities from July 19, 1968, to June 4, 1974 caused merely temporary aggravations of his condition are without substantial evidentiary

support in view of the record as a whole and cannot stand. There was no medical testimony contradicting that of Drs. Salovich and Florence or supporting the compensation court's findings. Cf. *Rohr v. Knutson Const. Co.*, Minn., 232 N.W.2d 233 (1975); *Flavin v. Totino's Finer Food*, Minn., 238 N.W.2d 433 (1976). Employee's testimony on the whole was consistent with the opinions expressed by the doctors. He did not testify that when he ceased work his back returned to its former state, as was true in *Meyer v. Abel Signs*, Minn., 236 N.W.2d 774 (1975), and *Marsden v. Village of Mabel*, Minn., 253 N.W.2d 275, filed herewith.

We conclude that the evidence established that employee sustained aggravations of his preexisting condition by reason of his normal work activities for Richfield and for J–D's Bar between July 19, 1968, and June 4, 1972, and that these aggravations contributed to cause his disability. Thus, they resulted in compensable injuries. *Gillette v. Harold, Inc.*, 257 Minn. 313, 101 N.W.2d 200 (1960); *Johnson v. Armour & Co.*, 297 Minn. 510, 210 N.W.2d 247 (1973); *Meyers v. Electro-Static Finishers, Inc.*, 303 Minn. 508, 230 N.W.2d 24 (1975).

Employee also challenges the compensation court's finding that on the record before it the wage he received while working for J–D's Bar could not be determined. The finding is clearly correct since the only reasonable inference permitted by the evidence is the employee's wage was irregular.[1] Accordingly, his daily wage must be computed according to the formula set forth in Minn.St. 176.011, subd. 3.[2] The computation cannot be made until further evidence is supplied.

Richfield and Northwestern National contend that employee did not give notice to Richfield of the injury resulting from his work activities after July 19, 1968. No finding was made on this issue, an oversight which can be remedied on remand.

Reversed in part, affirmed in part, and remanded for further proceedings in accordance with this opinion.

---

1. Employee said he could draw "up to $200.00 a week" and that he considered his salary to be $200 weekly. He also said he could waive his salary, and often did, and that the corporation (whose board of directors were employee and his brother-in-law) made the decisions on "how much he would be paid and when."

2. Minn.St. 176.011, subd. 3, provides in part: " 'Daily wage' means the daily wage of the employee in the employment in which he was engaged at the time of injury, but does not include tips and gratuities paid directly to an employee by a customer of the employer and not accounted for by the employee to the employer. If the amount of the daily wage received or to be received by the employee in the employment in which he was engaged at the time of injury was irregular or difficult to determine or if the employment was part time, the daily wage shall be computed by dividing the total amount the employee actually earned in such employment in the last 26 weeks, by the total number of days in which the employee actually performed any of the duties of such employment * * *."