HAROLD S. CHINN v. BOARD OF EDUCATION, CITY
OF DULUTH, AND ANOTHER.

129 N. W. (2d) 788.

July 10, 1964—No. 39,292.

*John M. Prins,* for relators.

*M. J. McKeon,* for respondent.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission.

On April 12, 1961, Harold S. Chinn, employed by the Board of Education of the city of Duluth, lost his balance and fell while preparing to leave Denfeld High School where he had been working. The Industrial Commission determined that the injury then sustained arose out of and during the course of his employment and that, as a result, the employee suffered a 30-percent permanent partial disability to his back and a 30-percent permanent partial disability to his left arm.

Before this accident, Mr. Chinn, who had served as a teacher for about 35 years, had experienced numerous physical ailments including hypertrophic arthritis of the spine (osteoarthritis); coronary insufficiency due to arteriosclerosis; gouty arthritis; vertigo; and a failure of visual capacity which began in 1942 and, by the time of the accident, had deteriorated to the point where he could not read ordinary writing. Although his principal assignment during the years had been that of a physical education instructor, his visual limitations were such as to restrict his duty during the 4 years prior to his fall to study-hall proctoring. He returned to work on April 14, 1961, and missed no time from his employment because of the fall until his retirement at age 65 in July 1962.

The evidence disclosed by the record leaves the question of causal relationship so much in doubt that we feel compelled to remand the case to the Industrial Commission which will (1) refer the employee to a neutral physician for examination and evaluation, and (2) review its determination in light of the testimony of such neutral physician to be received at a hearing and tested by cross-examination by the attorneys for both the employee and the employer.

Analysis of the medical testimony upon which the determination of the Industrial Commission is based will demonstrate the reason why the

procedure directed by this court is indicated. Dr. A. J. Spang, a physician engaged in the practice of his profession at Duluth, specializing in general surgery, appeared before the referee on July 23, 1962. His testimony was based in part on a history to the effect that the petitioner had no symptoms relating to the left shoulder or the lumbar area of the back prior to the accident of April 12, 1961, and that he was "active [and] engaged in all sorts of physical activities, and sports." The condition of the petitioner following the accident, as understood by Dr. Spang, was that "he has gradually become more disabled and has pain and stiffness in his back and shoulder and he is unable to engage in any physical activities to any significant degree, and his disabilities are progressively becoming worse."

Dr. Spang recited his observations upon physical examination; reviewed X rays; and outlined the results of certain laboratory studies made at his direction. He then testified:

"On the basis of the history, the examination, the X-ray findings and the laboratory findings and the progress of the condition, it was my opinion at that time that the patient suffers from a rheumatoid spondylitis of the spine with involvement of the left shoulder and that is a traumatic rheumatoid spondylitis."

In explaining his conclusion that the rheumatoid spondylitis was traumatic in origin, Dr. Spang testified:

"Here was a man that was prior to the accident, healthy, active, engaged in all sorts of physical activities, and sports and since the trauma he has rapidly and progressively become almost totally disabled as far as any sports, athletics, physical activities of any type of concern, and this occurred in a period of about a year."

He attributed a 30-percent partial disability of the spine and a 50-percent permanent partial disability of the left arm to the rheumatoid spondylitis caused, as he testified, by the fall of April 12, 1961.

That the X-ray evidence established the existence of osteoarthritis prior to the accident was recognized, but in this respect he said:

"Q. In your opinion, has the arthritis which Mr. Chinn apparently suffers from have any cause or connection with this accident * * *?

"A. If I understand your question correctly, it's my opinion that he has had the osteo arthritis prior to the accident which may have been aggravated some by the accident but his primary problem resulted from the accident is the development of the rheumatoid spondylitis * * *."

The attending physician, Dr. John Barker, engaged in general practice in Duluth, expressed the opinion that Mr. Chinn was suffering a 20-percent disability of the lumbar spine and a 50-percent disability of the left upper extremity attributable to the April 12 accident. Although he testified that the fall aggravated a preexisting osteoarthritis, he did not specifically place his opinion as to cause of disability on this theory. He acknowledged but, it seems, did not fully accept the theory that the disability was the result of rheumatoid spondylitis originating in trauma when he testified:

"Q. Dr. Barker, in your opinion, is the diagnosis of rheumatoid spondylitis a certainty at this time?
"A. Not 100%.
"Q. He had many arthritic changes, Doctor, that are hypertrophic in nature?
"A. That is right.
"Q. He has problems in his right arm, does he not?
"A. Yes, he has.
"Q. They are less marked than in the left?
"A. Yes, and there is no loss of motion connected with the right arm.
"Q. When did you make a tentative diagnosis of rheumatoid spondylitis?
"A. I did not, that was Dr. Spang.
"Q. You never made such a diagnosis, have you, on your own?
"A. No, I haven't."

Hospital records introduced in evidence contain the following comments by Dr. Barker's associate, Dr. F. L. Johnson, made in May 1962:

"* * * Patient is a 64 year old school teacher who is suffering many

infirmities; namely recurrent gouty arthritis, vertigo on an apparent vascular basis, recurrent back, shoulder and chest pain due apparently to nonspecific bursitis, plus osteoarthritis, * * *. * * * Patient feels that these problems were precipitated acutely with back, shoulder, chest pain and general malaise following a fall at Denfeld High School. Since that time he has complained of fatigue, recurrent back pain, shoulder and chest pain, although careful evaluation of these complaints is more consistent with a progressive disease and age changes. * * * Patient is suffering from some infirmities of age, degenerative and hypertrophic arthritis of the spine, but do not feel that these problems were acutely precipitated."

Two specialists were called on behalf of the employer: Dr. J. J. Coll, a member of the Board of Internal Medicine with practice limited to that field, and Dr. William Atmore, specializing in the field of orthopedic surgery and a member of The American Orthopedic Board of Orthopedic Surgery and of The American Academy of Orthopedic Surgery. These physicians concurred in the judgment that the disability experienced by Mr. Chinn at the time of the hearing was not attributable to the fall of April 12, 1961.

Dr. Coll testified categorically that the employee was not suffering from rheumatoid spondylitis and assigned the following reasons for his opinion: (1) Rheumatoid spondylitis is a disease of young people; (2) absence of classic X-ray changes; (3) absence of spinal rigidity.

Dr. Atmore attributed Mr. Chinn's back difficulties to hypertrophic changes wholly unrelated to the accident. He eliminated rheumatoid spondylitis as a cause of the disability because—

"* * * rheumatoid spondylitis is a disease of young males and it involves an inflammatory process which in time eventually produces calcification in the ligaments and fusion of the small joints of the back beginning with the sacroiliac * * *. In rheumatoid arthritis in the early stages there are spurs which perhaps in the early stages look like the spurs of hypertrophic arthritis. The reason I rule that out in this case is because of the age and the X-ray changes."

Generally speaking, the Industrial Commission is free to accept the

medical opinion which has reasonable support in the evidence and which appears to it, as trier of the facts, to be reasonable. In this case, however, we cannot find any basis in the record which permits or justifies acceptance of one medical opinion in preference to the other. Relators have expressed willingness to accept the findings of a neutral physician.

Minn. St. 176.155, subd. 2, provides as follows:

"In each case of dispute as to the injury the commission * * * may upon its own * * * motion, * * * designate a neutral physician of good standing and ability to make an examination of the injured worker and report his findings to the commission, * * *. The commission * * * may request the neutral physician to answer any particular question with reference to the medical phases of the case, including questions calling for an opinion as to the cause and occurrence of the injury insofar as medical knowledge is relevant in such answer. A copy of the signed certificate of such neutral physician shall be mailed to the parties in interest and either party, within five days from the date of mailing, may demand that such physician be produced for purposes of cross-examination. Such signed certificate of a neutral physician is competent evidence of the facts stated therein. The expense of such examination shall be paid as ordered by the commission, commissioner or referee."

In our judgment, § 176.155, subd. 2, was enacted to meet the exigencies of a situation just such as this, and the information available because of it should be secured as a basis for decision. We, therefore, remand the case to the Industrial Commission which will "designate a neutral physician of good standing and ability to make an examination of the injured worker and report his findings to the commission." The exhibits received in evidence at the time of the first hearing and any other relevant data should be made available to him. He will be free to conduct such additional examination and tests as the situation may require.

It is assumed that the report to be made by the neutral physician will require elucidation. The statute provides that either party "may demand that such physician be produced for purposes of cross-exam-

ination." We assume that such a demand will be made in this case. Therefore, arrangements should be made so that such cross-examination can be conducted at the appropriate time. The decision of the Industrial Commission is reversed and the matter is remanded for proceedings consistent with this opinion.[1]

Reversed and remanded.

---

[1] See, Minn. St. 176.481; Larson v. Davidson-Boutell Co. 258 Minn. 64, 102 N. W. (2d) 712.