VICTOR P. MILLER, SR. v. YOUNG, INC., AND ANOTHER.

156 N. W. (2d) 243.

February 16, 1968—No. 39,791.

*Gerald B. Forrette,* for relator.

*C. A. Stark* and *Ronald O. W. Ylitalo,* for respondents.

ROGOSHESKE, JUSTICE.

Certiorari upon the request of an employee to review a decision of the Industrial Commission denying workmen's compensation benefits to him

upon a finding that there was no causal relationship between his condition of permanent total disability and the personal injuries he sustained while working as a mechanic.

The employee, Victor P. Miller, Sr., 59 years old at the time his claim petition was heard by the referee on March 20, 1963, was employed by Young, Inc., as an auto mechanic from August 19, 1958, to July 9, 1959. On May 12, 1959, he was changing bearings on a new automobile. The automobile was jacked up and he was sitting on a creeper underneath and applying pressure to tighten a bolt by pulling on a large socket wrench with his left hand. The wrench slipped off the bolt and he fell backwards. The back of his left shoulder struck the corner of the creeper. He sought no medical attention and continued to work until July 9, 1959, when he had a similar experience of a wrench slipping. On this occasion he sustained a minor laceration of the palmar surface of his right wrist requiring five sutures. During the course of treatment for this injury he did not mention the left-shoulder injury. It was not until July 25, 1959, that he made any complaint to his treating doctor of pain in the left arm, shoulder, and back. He has not been gainfully employed since July 9, and since July 25 he has received extensive medical treatment for the disability he claims resulted from the May 12 injury. The employer sent a report of the wrist injury to its insurer on July 10 and of the shoulder injury on July 29. From that time to February 23, 1962, the insurer voluntarily paid medical and hospital expenses and also paid compensation benefits for 137 weeks totaling $6,165. It then filed notice that it denied liability on the ground that the payments had been made by mistake, so the employee filed a claim petition. As we read the record, the significant disputed issue raised and tried before the referee was whether the employee's present total disability was caused or aggravated by the personal injury he sustained on May 12.

At the hearing before the referee, the medical witnesses were in substantial agreement that the employee was suffering from a generalized atrophy or dystrophy of his muscles affecting all extremities, accompanied by some developing psychoneurosis, and that he is totally disabled. There was conflict in the medical testimony as to whether this deterioration in body and mind resulted from or was aggravated by the injury of

May 12, and if not, if some part thereof was causally related to that injury. Five doctors testified, and the written opinions of others relevant to the disputed issue were contained in a large number of hospital records and exhibits.

The referee found the employee permanently and totally disabled as a result of a disease condition which was not caused or aggravated by the injuries of May 12 and July 9, but found that as a result of those injuries he sustained a temporary total disability of 75 weeks and a 45-percent permanent partial disability of the left arm. These findings of work-related disability were based on medical testimony that the employee sustained an injury to his brachial plexus on the left side on May 12, but that such injury did not cause the generalized deterioration and psychoneurosis now rendering him totally disabled.

These findings were not wholly consistent with the opinions expressed by any medical witness. They adopted in part the opinions of both of the specialists in neurology and psychiatry called by the employee and the employer-insurer. The latter found a brachial plexus injury to the left side which had caused 100-percent permanent total disability to the left arm, while the former believed this injury had developed into a severe psychoneurosis which rendered the employee totally and permanently disabled. The referee rejected this opinion of work-related total disability and also the opinions expressed by two orthopedic specialists that any disability of the employee was not due to a nerve injury to the left shoulder, but was probably the result of a central nervous system disease of unknown origin. The persuasive force of the medical opinion of the physicians supporting the referee's findings was somewhat diminished because of the variance between the employee's recital of the details of the May 12 injury to the examining doctors and his recital at the hearing, and because of their incomplete knowledge of the employee's health prior to May 12, including "spells" tentatively diagnosed and treated as epileptic seizures.

Following the referee's decision and the filing of an appeal to the commission by the employee and a cross-appeal by the employer-insurer, the employee requested that if there was to be a denial of benefits a neutral physician should be appointed by the commission. The commission, de-

claring that "additional medical information [was] necessary and desirable," appointed the Mayo Clinic as neutral examiners and requested answers to four specific questions, including, "What is the relationship, if any, between any of the employe's disabling conditions and his alleged injury of May 12, 1959, * * *." A report by one of the three neutral medical experts who examined the employee was not considered responsive enough to the questions. At the urging of the parties, the commission requested further specific answers to the questions. The second report found the employee totally disabled due to "a severe psychiatric disorder" and repeated, as stated in the first report, that "it would be difficult to see how the rather insignificant injury apparently sustained on May 12, could have produced this picture." No cross-examination of the neutral examining physicians was requested.

In reversing the referee and denying all benefits, the commission stated in a memorandum accompanying its decision:

"The weight of the evidence, as seen primarily by the Mayo Clinic neutral physician's report, is that there is no relationship between any of the employe's debilitating conditions, and either his injury of May 12, 1959, or July 9, 1959."

On this appeal, the employee seeks a remand with directions to the commission to accept the medical opinion of either one of the two neurologists who testified at the hearing before the referee. He contends that the commission "blindly accepted the opinion of the Neutral Physician as administrative convenience"; that the neutral physician's qualifications were not set forth; that the report was not "clear and concise"; and that the commission's decision ignored "the clear and convincing" medical testimony of the two neurologists and psychiatrists whose specialty best qualified them to express opinions concerning the disputed issue.

We are not persuaded that the record demonstrates that the commission "in effect delegated its function as a fact-finding tribunal to the [neutral] medical witness," as employee argues. As is often the case, the commission was confronted with a fact issue involving an understanding and resolution of a very difficult medical question. To perform its fact-

finding function, the commission necessarily had to choose between the conflicting medical opinions by evaluating their persuasive weight based not only upon the qualifications of the expert witnesses, but also, and often more persuasive where the triers have themselves developed an expertise, upon any deficiencies in the witnesses' analyses of the cause and nature of the employee's injury or illness. Kolflat v. Northern Ordnance Co. 274 Minn. 104, 142 N. W. (2d) 588. Such deficiencies could be, as here, based upon erroneous assumptions concerning the facts of the work-related acts or upon omissions with respect to the prior health of the employee, as well as upon numerous other factors involving credibility.

Apart from the report of the neutral physician, the evidence would have reasonably justified the commission to allow benefits for permanent total disability as claimed, to uphold the referee, or to deny benefits. Cooper v. St. Paul City Ry. Co. 54 Minn. 379, 56 N. W. 42; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 107 N. W. (2d) 85. However, a consideration of the testimony, the exhibits, and the arguments of the parties did not convince the commission that a justifiable preference for one of the alternatives was indicated, and they quite properly exercised their statutory authority to appoint a neutral physician.[1] At this point, the parties could anticipate that, barring some extraordinary developments or effective attack upon the credibility of the neutral's opinion, the commission would choose that alternative to which the neutral physician's report added evidentiary weight. Chinn v. Board of Education, 268 Minn. 455, 129 N. W. (2d) 788; 49 Minn. L. Rev. 185. Although the neutral examiners experienced lack of cooperation by the employee when he appeared for examination, they had before them his entire hospital record disclosing the origin and course of his disability, and we do not find that the report is vague and indefinite or otherwise than an objective expression of their findings. For reasons which escape us, the employee, forewarned of the result by the report, saw fit not to exercise his right to cross-examine the neutral physicians and thereby to aid the commission in evaluating the weight to be given the report. The report is made compe-

---

[1] Minn. St. 176.155, subd. 2.

tent evidence by the statute authorizing the appointment of a neutral physician, and we believe the commission was fully justified in relying upon it in resolving the issue of fact presented. Minn. St. 176.155, subd. 2. We could not reverse the commission's decision without indulging in factfinding, which of course is not our function.

Affirmed.