ROMAN GRAU v. INTERNATIONAL MILLING, INC.,
AND ANOTHER.

220 N. W. 2d 491.

July 12, 1974—No. 44456.

*Robins, Davis & Lyons* and *Arnold M. Bellis,* for relator.
*Van Eps, Gilmore & Chantry* and *Curtis C. Gilmore,* for respondents.

PER CURIAM.

Certiorari upon petition of employee to review a decision of the Workmen's Compensation Commission denying benefits to him upon a finding that there was no causal relationship between his permanent total disability and the injuries he had sustained.

Employee, 58 years old at the time of the injury, was employed by respondent milling company as a laborer. His duties included driving a truck, shoveling grain, carrying sacks, etc. He was 31 years old when he first was employed at the milling company. Prior to that, his work experience was confined to farming.

On May 12, 1967, employee sustained an injury to his right knee when he hit his knee against a ladder on a truck. Upon examination the knee was found to be swollen, painful, and tender. No X-rays were taken. The injury was diagnosed as a knee sprain. Employee was disabled for 2½ weeks and returned to work without any apparent residual effects.

While shoveling soy bean meal into a pit during the rain, employee on April 4, 1968, slipped and fell, sustaining a fracture of his right leg. He was cared for at a hospital in New Ulm, Minnesota, by a general practitioner who found a fracture of the tibial plateau at the knee joint. The X-rays revealed a cyst inside the tibia. Because of the nature of the injury and the complications of the cyst, the local doctor called in an orthopedist, Dr. Roland F. Neumann. The orthopedist's findings after examining employee were "x-rays revealed a pathologic fracture of the proximal tibia into a large cystic lesion of the bone involving both condyles of the proximal tibia." A biopsy found the tumor to be nonmalignant. The employee was moved to a Minneapolis hospital where Dr. Neumann performed a radical resection and curettage of the tumor and packed the cavity with bone chips, in other words, a multiple bone graft. In his testimony, Dr. Neumann concluded that the manner of the fall was the cause of the fracture rather than the existence of the tumor causing a weakness of the bone. After the surgery employee returned home to recuperate. After the cast was removed, he was unable to put his full weight on the leg and used crutches to get about. In March of 1969, X-rays revealed the fracture and bone grafts were healing nicely, but in May of 1969, X-rays disclosed again the presence of a giant cell tumor. This tumor was massive and had destroyed the bone structure of the weight-bearing portion of the tibia. Amputation 11 inches below the hip was necessary and was performed in July of 1969.

Employer accepted the fracture as compensable and paid compensation for temporary total disability and 20-percent permanent partial disability of the right leg. Liability was denied for disability beyond the date of the X-rays disclosing the recurrence of the tumor. Employer refused to pay the medical expenses incurred by the amputation as well as compensation benefits resulting therefrom. The payment of compensation for 20-percent permanent partial disability of the leg apparently was based upon the opinion of one of employer's doctors. Relator seeks total permanent disability benefits.

The evidence consisted primarily of testimony of employee, Dr. Neumann, and two orthopedists who testified on behalf of employer. Both orthopedists testified there was no relationship between the frac-

ture and the recurrence of the giant cell tumor. The compensation judge appointed a neutral physician, Dr. Franklin H. Sim of the Mayo Clinic. A hypothetical question was submitted to Dr. Sim which he answered by letter. He was also cross-examined by employee. Dr. Sim's opinion, simply stated, is that "the trauma has no relationship whatsoever to the cause or course of the giant cell tumor."

The compensation judge denied employee's claim for an award of total permanent disability. This decision was affirmed by a majority of the commission. Seeking reversal, employee contends:

1. The injury resulted in a permanent total disability even without the recurrence of the giant cell tumor.

2. The fracture suffered as a result of the fall combined with a preexisting injury to necessitate the amputation.

3. The decision of the commission was derived from medical testimony premised upon an erroneous assumption that the fracture was pathologic in nature.

Employee argues that his injury resulted in permanent total disability even without the recurrence of the giant cell tumor. The argument is based primarily upon the holding in Gillette v. Harold, Inc. 257 Minn. 313, 101 N. W. 2d 200 (1960), that a preexisting infirmity does not disqualify a claim arising out of employment if the employment aggravated, accelerated, or combined with the infirmity to produce the disability. The commission affirmed the hearing referee's findings, Paragraph XV of which provides:

"That the employee has been permanently and totally disabled from April 3, 1969, to the date of last hearing herein on August 13, 1971, with said disability continuing on said date, but said disability was not as a result of the personal injuries of May 12, 1967, or April 4, 1968."

This finding was based upon competent medical testimony of two orthopedists and a neutral physician that trauma had no relationship to the cause or course of the giant cell tumor. The infirmity no doubt was a causal factor in the fracture. The claim up to and including the fracture was recognized as compensable. A conflict in the facts as to whether the fracture had healed sufficiently to permit weight bearing was resolved by the commission's accepting a decision favorable to employer. This resolution is supported by the evidence.

Clearly, the medical evidence that the recurrence of the tumor was not related to the accident was supported by competent medical testimony. Employee's attending physician was not completely consistent in his opinion as to whether the tumor was aggravated or accelerated

by the trauma. The commission was justified in relying on the testimony of the two orthopedists and the neutral physician's opinion which was based upon more recent studies. The determination by the commission that employee's present disability is unrelated to his personal injuries is a factual determination and cannot be disturbed by this court, particularly where supported by competent evidence based upon updated medical research.

Employee's second contention is much the same as his first, although stated differently. The argument fails to recognize the compelling medical testimony that the existence of the tumor had no causal relation to the accident. Considering the testimony concerning the accident and the extent of the damage to the bone caused by the tumor, the commission would be justified in inferring that the fracture was, in fact, caused by the tumor rather than by the fall. Employer has satisfied any liability for compensation by recognizing the fracture as compensable, even though it was caused or aggravated by the infirmity, and by paying temporary total and permanent partial disability benefits therefor.

Employee's third contention again is much the same in theory as his first and second claims. This final contention rests on a technical position that the medical opinions were based upon an erroneous assumption that the fracture was pathologic, rendering the opinions erroneous as not based upon the evidence. Again, employee resorts to a pure fact issue. His position factually is not supported even by his own attending physician. Dr. Neumann agreed in his testimony that the tumor existed before the fall; that it had weakened the leg, making it susceptible to a fracture; and, more particularly, that the fracture that the employee sustained was a pathologic fracture. Nor does the other medical testimony support employee's position. All of the other doctors were fully apprised of the nature of the fall and after an examination of the medical records concluded that the injury was due to a pathologic fracture.

This case presented to the commission a problem not unlike that in the case of Miller v. Young, Inc. 279 Minn. 273, 276, 156 N. W. 2d 243, 246 (1968), wherein this court said:

"* * * As is often the case, the commission was confronted with a fact issue involving an understanding and resolution of a very difficult medical question. To perform its factfinding function, the commission necessarily had to choose between the conflicting medical opinions by evaluating their persuasive weight based not only upon the qualifications of the expert witnesses, but also, and often more persuasive where the triers have themselves developed an expertise, upon any de-

548

ficiencies in the witnesses' analyses of the cause and nature of the employee's injury or illness.

\* \* \* \* \*

"\* \* \* We could not reverse the commission's decision without indulging in factfinding, which of course is not our function."

Affirmed.