Edward **WILLIAMSON**, Respondent,

v.

**BESCO'S SERVICES** et al., Relators.

No. 48313.

Supreme Court of Minnesota.

Sept. 15, 1978.

Hansen, Dordell & Bradt and Darrell M. Hart, St. Paul, for relators.

Garland C. Brandt, Minneapolis, for respondent.

TODD, Justice.

Besco's Services, Inc., and its compensation insurer seek review of a decision of the Workers' Compensation Court of Appeals in which that court, with one judge dissenting, found that Besco's employee, Edward Williamson, has sustained a 50-percent permanent partial disability of his right leg as a consequence of an employment-connected accident and also denied relators' petition for appointment of a neutral physician pursuant to Minn.St. 176.155, subd. 2, to evaluate the extent of employee's permanent partial disability.[1] They argue that the record does not permit or justify the court of appeals' acceptance of the opinion of one medical expert on this issue over the opinions of two other experts who rated employee's permanent disability at much less than 50 percent. Our review of the record convinces us, however, that the finding has substantial evidentiary support and the court of appeals did not abuse its discretion in refusing to appoint a neutral physician.

Minn.St. 176.155, subd. 2, provides that the court of appeals may, upon request of any interested party in a matter before it, appoint a neutral physician to examine the employee and report his findings. It also provides that that court "may request the neutral physician to answer any particular question with reference to the medical phases of the case."[2] The statute has been held to be permissive rather than mandatory. *Hosking v. Metropolitan House Movers Corp.*, 272 Minn. 390, 138 N.W.2d 404 (1965); *Dukek v. Greif Brothers Cooperage*, 280 Minn. 535, 160 N.W.2d 159 (1968). In *Chinn v. Board of Education*, 268 Minn. 455, 129 N.W.2d 788 (1964), however, this court remanded the case with directions for ap-pointment of a neutral physician to render an opinion on the cause of the employee's disability because we could find no basis in the record for acceptance of one of two diametrically opposed medical opinions on the issue over the other, and in *Dukek* we said that the appointment is required when the record contains no basis for choosing between conflicting expert opinions. That is not true here, in spite of the considerable disparity in the ratings of employee's disability by the medical experts, because the grounds expressed for their opinions and employee's uncontradicted testimony about his condition afforded a reasonable basis for the court of appeals to accept the expert opinion on which its finding was based.[3]

The cause of employee's disability was a severely comminuted depression fracture of the lateral tibial plateau of his right leg (the area which is the leg portion of his knee joint), sustained in the employment-related accident on August 12, 1975. Dr. Patrick Kelly, the orthopedic surgeon who treated employee and last saw him in August 1976, rated him as having a 20-percent permanent partial disability of the right leg. This opinion was based on findings of a 15-degree impairment of motion, a 10-degree angulation of the knee, and a breaking up of the weight-bearing surface of the knee joint, and on the doctor's prognosis of "almost certain" future osteoarthritis in the injured area. Dr. Ronald Lampert, a board-certified orthopedic surgeon who examined employee in October 1976 for relators, rated him as having a 15-percent disability, based on the history of the injury, X-rays he took at the time of the examination, and findings of a 15-degree loss of flexion, a 5-degree loss of extension, and a 5-degree angulation of employee's knee. Dr. Virgil Lundquist, a board-certified general surgeon

---

1. The court of appeals also found without dissent that employee has been temporarily totally disabled since the date of the accident. This finding is not challenged.

2. Minn.St. 176.391, subd. 2, also provides that the court of appeals "may appoint one or more impartial physicians or surgeons to examine the injury of the employee and report thereon."

This section does not appear to confer any different or greater authority than § 176.155, subd. 2, does.

3. Another case involving a wide disparity in the medical experts' evaluation of an employee's permanent partial disability is *Stotz v. Sabin Brothers*, Minn., 257 N.W.2d 359 (1977).

called as a witness by employee, examined him in December 1976. Dr. Lundquist rated employee's disability as 45 to 50 percent, based on findings of a 20-degree loss of flexion, 10-degree loss of extension, and some loss of angle at the knee joint, and on additional findings that employee's right leg is 1¼ inches shorter than the other, causing a tilt of employee's pelvis, that he has edema in the lower right leg, suggesting venous insufficiency resulting from injury to blood vessels, that he has arthritic changes, swelling above his kneecap, and some weakness in the quadriceps muscle. His evaluation was accepted by the majority of the court of appeals.

■■■■ Employee's unrefuted testimony concerning his present difficulties, to which the majority gave credence, is consistent with Dr. Lundquist's findings. Employee said that his right leg is shorter than the other one, that it swells from the knee down through the foot, and that his shin bone stings, his right knee hurts like a toothache, and his foot "freezes." He said he has limited motion in the knee, that it tends to lock, and that he cannot stand or walk very long at a time. This testimony clearly permitted the court of appeals to infer that Dr. Lundquist's evaluation of employee's disability was more accurate than the conclusions of the other medical experts. We have often said that resolution of conflicts in the opinions of medical witnesses is for the trier of fact, and since the record here contains substantial evidence in support of the finding which resolved that conflict, the finding must be affirmed. Moreover, since the record justified the court's acceptance of Dr. Lundquist's opinion rather than those of the other experts, the court of appeals did not abuse its discretion in denying relators' request for appointment of a neutral examiner.

Employee is allowed attorneys fees in the amount of $350.

Affirmed.

OTIS, Justice (dissenting).

This is precisely the kind of a case which calls for a medical examination of respondent by a neutral physician as authorized by Minn.St. 176.155, subd. 2. Accordingly, I join in the dissent expressed by Judge McCarthy of the Workers' Compensation Court of Appeals.

As is frequently the case, the opinion of the treating physician, Dr. P. J. Kelly, a professor of orthopedics at the Mayo Foundation, was ignored and the opinion of Dr. Virgil Lundquist, who did not examine the employee until 16 months after the accident, was accepted by the court of appeals. Typically the attorneys for the employer and employee each picked a doctor deemed favorable to the position of his client. The only apparent reason given for disregarding the opinion of Dr. Kelly was the fact that he did not stress the shortening of respondent's leg. However, as Judge McCarthy points out in his dissent, Dr. Kelly did testify with respect to angulation of the leg which reduces the matter to a "question of semantics."

Since for whatever reason the court gave little credence to the Mayo Clinic treating physician, it seems to me that if the purpose of the judicial process is to arrive at the facts with some impartiality and objectivity, some weight should be given to the opinion of a neutral physician in preference to the opinions of physicians who are essentially advocates. This clearly was the purpose of adopting Minn.St. 176.155 and I therefore share the view of Judge McCarthy that an opinion of a neutral physician is essential under the circumstances of this case.

PETERSON, Justice (dissenting).

I join in the dissent of Mr. Justice Otis.