**Alvin T. PEDERSON, Respondent,**

v.

**INDIANHEAD TRUCK LINE, INC., et al., Relators.**

Nos. 48008, 48941.

Supreme Court of Minnesota.

March 30, 1979.

Van Eps & Gilmore and John H. Lewis, Minneapolis, for relators.

Ronald E. Erickson, Compensation Atty., St. Paul, for respondent.

YETKA, Justice.

Relators, Indianhead Truck Lines, Inc., and its compensation carrier, seek review of a decision and subsequent order of the Workers' Compensation Court of Appeals awarding employee compensation for temporary total disability from April 10, 1976, and for a 20-percent permanent partial disability of the back. Although we agree that the finding of permanent partial disability and the award therefor must be reversed, we otherwise affirm the decision, holding the court of appeals properly appointed a neutral physician under the facts of this case and that his testimony furnishes substantial evidentiary support for the finding of a causal relationship between a fall employee sustained on December 18, 1975, during his work and the subsequent disability he has experienced.

Employee's back troubles antedated the fall by 10 years, although he claimed he had not had serious problems. A truck driver, he felt a "catch," a sudden sharp pain in his midback and left side while bending in the course of his work in 1965. He may have had some therapy then but did not miss work. Apparently the symptom would recur with certain movements of his body in subsequent years. In March 1973 his automobile was struck from behind, and his back became stiff and sore, particularly in the middle and lower areas. He received physical therapy at Mayo Clinic and missed 11 weeks of work. He said his back "felt good" when he returned and that he did not miss further time.

On December 18, 1975, while returning some papers to a customer of the employer, employee slipped on an icy incline. Although he thought he twisted his back, he avoided falling on it by putting his left

hand out so that only his hand and knee hit the ground. As he straightened, he felt a shock across his shoulders and upper back. These areas felt stiff and sore at that time and became more sore in the next few days. On December 24, employee went to the Northeast Industrial Clinic. He was given some medication and received several physical therapy treatments in the following weeks. By December 30 his low back had become painful.

On January 23 he was referred to Dr. Edward McElfresh, an orthopedic surgeon who did not find objective evidence of injury but prescribed a lumbosacral support. On February 4 Dr. McElfresh released employee to return to work the next week. Employee did so but his back became so painful from lifting and pulling activities required in his work that he was forced to quit in less than two weeks. He returned to Dr. McElfresh who thought his condition essentially unchanged. On March 11, 1976, he saw Dr. Robert G. Tinkham, a consultant in physical medicine and rehabilitation at Mayo Clinic, who also found no objective evidence of injury. X-rays revealed degenerative changes in employee's low back, and Dr. Tinkham prescribed physical therapy, including massage, exercise, and instructions about posture and lifting.

Relators paid employee for temporary total disability from December 26, 1975, to April 9, 1976. At that time they filed a notice of intention to discontinue payment. Employee objected, claiming that he continued to be temporarily totally disabled. At the consequent hearing he testified that he has pain in his middle and low back more severe than any he had experienced after the automobile accident, he cannot do odd jobs about his home, and he has trouble riding in an automobile. He said his pain is relieved by taking Valium at night and Tylenol during the day. He denied any serious back trouble before the December 1975 incident but when confronted with prior statements that he had been treated for back problems for the past 10 years, he finally stated that he had had some problems prior to his fall in December 1975.

Dr. McElfresh testified that his examination had revealed some minor abnormalities in employee's back, but normal range of motion, strength, and sensation. The witness' impression was that employee had mechanical low back pain, which he defined as pain resulting from changes occurring due to age and stress. Dr. McElfresh was of the opinion that the incident of December 18, 1975, was a probable temporary aggravation of a previously existing low back problem which had ended by February 4, when he advised employee to return to work. He found no evidence that employee's condition was made worse by the incident and no evidence of a permanent disability. The doctor conceded that a fall involving a twisting injury could cause a muscle or ligament injury to the low back.

Dr. Tinkham also found that employee had full range of motion and no neurological deficit. X-rays disclosed degenerative changes in employee's lower back, and the witness diagnosed employee as having chronic low back strain and degenerative arthritis of the lumbar spine. In the absence of objective evidence that the incident of December 1975 had aggravated employee's preexisting condition, Dr. Tinkham would not relate the incident to employee's complaints. He could give no opinion concerning partial disability. He said, however, that pain is subjective and cannot be measured and that it can be present in the back but not detectable by "any means at hand."

The compensation judge, in spite of the opinions expressed by these medical witnesses, found that employee had suffered a personal injury in December 1975 which had resulted in temporary total disability which was still continuing at the date of the hearing, apparently basing this determination on Dr. McElfresh's opinion that employee had suffered a probable aggravation of a preexisting condition but rejecting his conclusion that this aggravation no longer had any effect. On appeal by relators the court of appeals appointed Dr. Kenath Sponsel as a neutral physician pursuant to Minn.St. 176.155, subd. 2, and requested his opinions on what injury employee sustained on De-

cember 18, 1975, if any, its effect, and whether employee was medically able to work.

Dr. Sponsel examined employee February 7, 1977, and reported that he has low back pain secondary to degenerative disc disorder, that he had sustained a sprain and further injury to the discs in his low back on December 18, 1975, that this injury was a substantial contributing factor in his disability, and that he is unable to do his former work. He added that employee has a 20-percent permanent partial disability of the spine. Dr. Sponsel remained of these opinions when cross-examined in May 1977. Following the cross-examination relators objected to his appointment as unauthorized by statute. Their objection was overruled.

In a decision filed June 23, 1977, the court of appeals affirmed and adopted the findings and determination of the compensation judge other than his finding that permanent partial disability was not yet ascertainable. The court added a finding that employee had sustained a 20-percent permanent partial disability of the back and an award reflecting the finding. Relators obtained certiorari to review this decision. In August 1977, however, we granted their motion for remand so that they could petition the court of appeals to vacate the decision because Dr. Sponsel, as relators learned in July 1977, had treated employee subsequent to examining him in February 1977 and had performed surgery on his back in March 1977.

In response to relators' petition the court of appeals ordered its decision of June 23, 1977, vacated pending the report of Dr. John McMahon, whom it appointed by separate order as a neutral examiner and asked to express opinions on the same questions Dr. Sponsel had answered.

Dr. McMahon, who is also an orthopedic surgeon, examined employee December 28, 1977. He reported that further evaluation by Dr. Sponsel including myelography revealed a spinal stenosis for which Dr. Sponsel had performed a total laminectomy of the lower two vertebrae. Dr. McMahon expressed the opinions that in the December 1975 fall employee had sustained a strain to the lumbar and lumbosacral areas of his back, superimposed on preexisting degenerative disc disease in the lumbar spine, and that this fall was a contributing factor to his disability, causing further compromise of the spinal canal and subsequent stenosis. In his opinion employee was not medically able to do sustained labor because of his disc disease and the surgery. When cross-examined at a hearing in March 1978, Dr. McMahon conceded that he had assumed that the injury from the automobile accident had not been a source of permanent injury and that the December 1975 injury had caused immediate problems to employee's low back. He did not think it unusual that the low back pain had in fact appeared 12 days later. He said the December incident was one of many and was hesitant to say it was a substantial factor contributing to employee's disability, but agreed it had been a significant or substantial factor in the sense that it was the precipitating factor in the chain of events that led to the ultimate spinal stenosis.

On April 25, 1978, the court of appeals issued an order affirming its prior decision of June 23, 1977, after determining that it had been sustained by Dr. McMahon's testimony. Relators again obtained certiorari.

Their primary contention is that the testimony of both Dr. Sponsel and Dr. McMahon was incompetent because the appointment of a neutral examiner at any point in the proceeding was an abuse of discretion on the part of the court of appeals. We are unable to agree.

Minn.St. 176.155, subd. 2, provides in part:

"*In each case of dispute as to the injury* the commissioner of the department of labor and industry, or in case of a hearing the compensation judge conducting the hearing, or the workers' compensation court of appeals if the matter is before it, may upon its own or his own motion, or upon request of any interested party, made in compliance with the rules of the commissioner of the department of labor and industry and the workers' compensation court of appeals regulating the proper time and forms for such request, desig-

nate a neutral physician of good standing and ability to make an examination of the injured worker and report his findings to the commissioner of the department of labor and industry, compensation judge, or the workers' compensation court of appeals as the case may be. The commissioner of the department of labor and industry, compensation judge, or the workers' compensation court of appeals, as the case may be, may request the neutral physician to answer any particular question with reference to the medical phases of the case, including questions calling for an opinion as to the cause and occurrence of the injury insofar as medical knowledge is relevant in such answer. A copy of the signed certificate of such neutral physician shall be mailed to the parties in interest and either party, within five days from date of mailing, may demand that such physician be produced for purposes of cross-examination. Such signed certificate of a neutral physician is competent evidence of the facts stated therein." (Italics supplied.)

Relators argue that here there was no "dispute as to the injury" because neither Dr. McElfresh nor Dr. Tinkham was of the opinion that the incident of December 1975 contributed substantially to cause employee's subsequent disability. They insist there must be a conflict in medical opinions before the appointment of a neutral physician is proper. They cite no authority and admit that this issue has not been raised, but insist that all other cases dealing with the subject have involved such a conflict. It is true that in *Chinn v. Board of Education*, 268 Minn. 455, 129 N.W.2d 788 (1964), where this court remanded for appointment of a neutral examiner because the medical opinions expressed were in complete opposition and we perceived no rational basis for preferring one to another, we remarked that the statute was designed to meet a situation like that one. We did not mean by that observation to restrict its application only to such situations. Rather, we believe that "dispute as to the injury" exists when one party claims the disability is work-related and the other denies that it is. That is the case here.

■ Relators urge that it is improper to appoint a neutral examiner merely because the record does not contain medical testimony sufficient to support an award for the employee. We agree that appointment for that reason would be an abuse of discretion if the facts and the medical testimony left no question about the correctness of the opinions denying causal relation between an employee's work-related injury and his disability. Here, however, employee's ability to work prior to December 18, 1975, and his inability to work when he had been advised he could do so in February 1976, Dr. McElfresh's agreement that employee could have sustained a muscle or ligament injury, and Dr. Tinkham's statements that pain is subjective and may be present in a person's back but undetectable by any tests employed by medical specialists all are factors which could reasonably have led the court of appeals to conclude that additional medical information was necessary and desirable for a proper determination of the issue. Our view that § 176.155, subd. 2, was intended to confer a broad discretion on the court of appeals is bolstered also by § 176.-391, which empowers that tribunal to make an independent investigation of facts alleged in a petition or answer, and in subd. 2 provides that it "may appoint one or more impartial physicians or surgeons to examine the injury of the employee and report thereon." The fact that this power is not conditioned upon the existence of "a dispute as to the injury" suggests that this phrase in § 176.155, subd. 2, was not intended to restrict appointment of a medical neutral examiner only to cases involving conflict in medical opinions. Under the circumstances of this case we conclude that the court of appeals did not abuse its discretion in appointing the neutral examiners.

■ Having determined that in each instance the neutral examiner was properly appointed, we recognize, as did the court of appeals, that Dr. Sponsel's subsequent treatment of employee, undisclosed by the doctor on cross-examination, tends to place his neutrality in question even though he undoubtedly acted in good faith. We believe, however, that Dr. McMahon's testimo-

ny alone was reasonably interpreted as expressing the opinion that the injury sustained by employee on December 18, 1975, was a substantial contributing factor in his temporary total disability. *Boldt v. Josten's, Inc.,* 261 N.W.2d 92 (Minn.1977). The finding to that effect and the award based thereon thus will not be disturbed.

Although only Dr. Sponsel expressed the opinion that employee sustained a 20-percent permanent partial disability, his opinion was subject to cross-examination and could perhaps be viewed as sustaining the finding and award relating to permanent partial disability. But the issue was not raised by the notice of discontinuance and the answer thereto, and counsel for both parties expressed their understanding at Dr. Sponsel's cross-examination that permanent partial disability was not in issue. Under the circumstances we believe the finding should be reversed, without prejudice, however, to a future claim for an award for permanent partial disability.

Employee is allowed $350 attorneys fees in this court.

Affirmed in part, reversed in part.