**Wilma O. BLOESE, Respondent,**

v.

**TWIN CITY ETCHING, INC., et al., Relators.**

No. 81–380.

Supreme Court of Minnesota.

March 12, 1982.

---

3. Appellant conceded in its brief that "it was apparent that the damages exceeded appellant's $50,000 payment."

Sahr, Kunert & Tambornino and Steven Mattaini, Minneapolis,. for relators.

Stuurmans & Kelly and Timothy D. Kelly, Minneapolis, for respondent.

OTIS, Justice.

The employer and insurer seek review of a decision of a divided Workers' Compensation Court of Appeals determining that employee gave notice of her claim and commenced this proceeding to obtain compensation for temporary total disability within the 2-year time limit provided in Minn.Stat. § 176.151(7) (1974).[1]

Minn.Stat. § 176.151(7) (1974) provided:

The time within which the following acts shall be performed shall be limited to the following periods, respectively:

\*     \*     \*     \*     \*     \*

(7) In the case of injury caused by x-rays, radium, radioactive substances or machines, ionizing radiation, or any other occupational disease, the time limitations otherwise prescribed by Minnesota Statutes 1961, Chapter 176, and acts amendatory thereof, shall not apply, but the employee shall give notice to the employer and commence his action within two years after the employee has knowledge of the cause of such injury and the injury has resulted in disability.

After several years of employment exposure to fiberglass dust and fumes from various chemicals, employee contracted bronchial asthma which in turn caused her to develop chronic obstructive lung disease. No

---

1. The time limitation provided in Minn.Stat. § 176.151(7) (1974) was extended to 3 years by Act of June 4, 1975, c. 359, § 17, 1975 Minn. Laws. *See* Minn.Stat. § 176.151(4) (1980). It would appear that employee would receive the benefit of this extension under *Klimmek v. Independent School Dist. No. 487*, 299 N.W.2d 501 (Minn.1980). However, since employee did not give notice nor commence the proceeding until April 1979, and the record requires the conclusion that the statutory limitation began to run in July 1974, she did not comply with either statute.

challenge is made to findings that her work exposure precipitated the asthmatic condition and that employee was totally disabled from March 25, 1974 to July 9, 1974, and has been so disabled since October 23, 1975. The evidence relative to the only contested issue—whether employee gave notice of her illness and commenced this proceeding to obtain compensation within the required time period—is also essentially undisputed. Employee admittedly did not give notice to the employer that she had contracted an occupational disease until she commenced this proceeding in April 1979, and she concedes that the employer did not have actual knowledge of the nature of her illness prior to that time. The focus of inquiry thus is whether employee complied with the statutory requirements that she give notice and commence her action within the prescribed period "after the *employee has knowledge of the cause of such injury* and the injury has resulted in disability." (emphasis added).

In February 1974 employee began coughing by the end of her work day and would cough during the night, but feel better by mornings and on weekends. She consulted Dr. John E. Middlebrook, her family doctor, who told her she had bronchitis. She missed a day from work at various times because of exhaustion after coughing during the night, and by April found that she was coughing on weekends also. During the night following her last day at work she had such difficulty breathing that she was hospitalized. Dr. Middlebrook, she said, informed her that she had a heart attack; the hospital records show his diagnosis to have been heart disease and bronchial asthma.

On returning home in May employee asked a fellow worker to obtain a list of the chemicals used at the employer's factory. She did not explain her purpose for this action, but testified that she had suspected "right from beginning" that her problems might be related to her job. At her husband's insistence she consulted an allergist, Dr. S. Scott Nicholas, on June 7, 1974, and gave the list of chemicals to him either on that day or on her second visit on June 24, 1974. On her first visit she asked Dr. Nich-

olas about returning to work and testified that "he said—'Are you out of your mind?'". Although employee clearly understood that Dr. Nicholas did not want her to return to her work, he did not recall discussing the cause of her illness with employee or her ability to work outside her home. On July 12, 1974, Dr. Nicholas wrote a report concerning employee's illness in which he stated:

> The diagnosis of perennial bronchial asthma of primarily the intrinsic variety, has been confirmed. *The possibility that this bronchial asthma has been aggravated or precipitated by exposure to fumes at work is very strong* but cannot be confirmed by testing methods. *The history is highly compatible with an occupational component,* however. (emphasis added.)

Employee admitted having seen this report at the time it was prepared. Dr. Middlebrook also reported to employee's counsel in August 1979 that he had not seen employee in over 5 years, but—

> I did advise her at the time that she should not do any further work at the place she was employed when her symptoms started because of the *strong possibility that this could be work-related.* (emphasis added).

In spite of the opinions of both doctors and her own suspicion that there was a relationship between her work and her illness, employee testified that "it just didn't ring a bell because even [though] my doctor said it was job related, * * * I just never—we never thought too much about it." In 1979, however, for reasons not disclosed in the record she consulted an attorney and commenced this proceeding in April of that year.

After considering the evidence the compensation judge found that by June 21, 1974, employee had acquired knowledge of the nature, seriousness and probable causal connection between her disability and her employment. Consequently, he concluded that she had not given notice nor commenced her action within the time required by the statute. On employee's appeal to

the Court of Appeals, the majority of that court disagreed, stating:

> We determine that the statutory two-year period within which the employee needed to give notice to her employer did not begin to run in June of 1974. * * * The facts demonstrate that employee did not receive any medical opinion or advice regarding the relationship of her disease and her employment until July of 1974, and that this opinion was not sufficient to prove a compensable claim under the Workers' Compensation Law.

Characterizing that medical opinion as merely stating "a possibility that there was a relationship," they suggested that employee might have subjected herself to dismissal of her claim for lack of a *prima facie* case and commented that her physician "did not really render an opinion sufficient to establish compensability" until he testified at the compensation hearing. They added:

> It is not insignificant to our determination and reasoning in this matter that the statute requires the employee not only to give notice when he has knowledge of the cause of his injury but also requires the employee to commence his action when he has knowledge of the cause of his injury. Clearly, if the employee only had medical support for her claim that indicated the employment was possibly related to her disease and based upon this support she files a claim petition, (commences an action) she is subjecting herself to a potential dismissal of her claim for lack of a prima facie case enabling her to go forward to a hearing.

> One must interpret "knowledge of the cause" with respect to *commencement of action* to mean that the employee has knowledge of information which is based upon reasonable probability and indicating that the employee's problem is employment related. To hold otherwise would be contrary to reason and logic and would defeat the purposes and intent of the Workers' Compensation Law. To apply a different interpretation to "knowledge of the cause" when analyzing whether the *notice* requirement has been met than when analyzing whether the

*commencement of action* requirement has been met would be blatantly inconsistent and borders on judicial legislation. (emphasis in original; footnote omitted).

Judge McCarthy, dissenting, agreed with the compensation judge that employee had neither given notice nor commenced her action within the statutory time. He pointed to the advice employee had received in May 1974 from Dr. Middlebrook, that she should not return to her work "because of the strong possibility that [her asthma] could be work-related," and to the report of July 12, 1974, from Dr. Nicholas stating that the possibility that her asthma had been aggravated or precipitated by her work environment "is very strong" and that her history was "highly compatible with an occupational component." Judge McCarthy concluded that this information would put a reasonable person on notice of the work relationship of her illness.

■■■ We also are required to conclude that the only inference which can be drawn from the evidence is that by July 1974 employee had received information which would lead a reasonable person to believe that her disability was probably compensable. We are persuaded also that the principle enunciated by Professor Larson is the correct test to determine when the statutory period begins to run:

> The time period for notice or claim does not begin to run until the claimant, *as a reasonable man*, should recognize the nature, seriousness and *probable compensable character* of his injury or disease. 3 A. Larson, The Law of Workmen's Compensation § 78.41 (1976). (emphasis added).

We construe "knowledge of the cause" as used in section 176.151(7) (1974) and in the present section 176.151(4) to mean sufficient information concerning the nature of an injury or illness, its seriousness, and its probable compensability to move a reasonable person to make inquiry concerning his rights. Thus, when a disabled employee has acquired such information, the limitation period within which he is required to give

notice and commence his proceeding has begun to run. Employee acquired that information by the middle of July 1974.

The construction advocated by the majority of the Court of Appeals—that an employee does not acquire "knowledge of the cause" of his injury until he receives a medical opinion concerning causation which is couched in terms of reasonable probability—is untenable. *See Boldt v. Jostens, Inc.,* 261 N.W.2d 92 (Minn.1977). Moreover, we are required to reject that construction as patently contrary to legislative intent since it would in effect abolish the requirements of giving notice and commencing a compensation proceeding within the prescribed time period.

Reversed.