Charles A. JONES, Relator,

v.

THERMO KING and Liberty Mutual Insurance Company, Respondents,

and

The Equitable Life Assurance Society of the United States, intervenor, Respondent.

No. C8–90–1365.

Supreme Court of Minnesota.

Nov. 2, 1990.

Rehearing Denied Dec. 7, 1990.

Daniel B. O'Leary, Mansur, O'Leary & Gabriel, P.A., St. Paul, for relator.

Edward A. Kutcher, Jr., Law Offices of Daniel J. Buivid, Mpls., for Thermo King and Liberty Mut. Ins. Co.

Michael H. Streater, Briggs and Morgan, P.A., St. Paul, for Equitable Life Assur. Soc. of the U.S.

### OPINION

SIMONETT, Justice.

The Workers' Compensation Court of Appeals panel, by a 2-to-1 vote, affirmed the determination of the compensation judge that the employee's claim for *Gillette* – type [1] injuries was barred by the statute of limitations. We affirm.

---

1. *Gillette v. Harold, Inc.*, 257 Minn. 313, 101    N.W.2d 200 (1960).

For some years employee Charles A. Jones operated an electric spray gun in the paint department of his employer, Thermo King. In 1982 he was experiencing pain and numbness in both hands and wrists. The company nurse referred him to Dr. Chris P. Tountas, who, on February 15, 1983, diagnosed a bilateral carpal tunnel syndrome. The next day, the employee notified Thermo King of his injury. On February 25, 1983, a First Report of Injury was filed with the Workers' Compensation Division of the Department of Labor and Industry. On or about March 1, the employee was sent a brochure explaining his rights under the compensation act. In March and April 1983, carpal tunnel release surgery was performed on both hands; Dr. Tountas felt there would be no residual impairment; and the employee returned to work in June 1983.

In his written reports in March and May 1983, Dr. Tountas noted that carpal tunnel syndrome usually involves work requiring repetitive bending of the wrist; so here, while spray painting at work could account for the syndrome in the right hand, as the employee was a right-handed painter, this would not explain the syndrome in the left hand. The doctor concluded: "It is difficult to attribute the cause of his carpal tunnel syndrome to the painting *if* it is done usually and primarily with the right hand." (Emphasis added.) The employer and insurer denied workers' compensation liability. Instead, the employee received medical and disability benefits under the employer's group health insurance.

The employee promptly retained a lawyer to pursue a workers' compensation claim. Nothing happened for over 2½ years.

Finally, on February 18, 1986, the employee's attorney wrote Dr. Tountas asking for another report and advising in his letter that although Mr. Jones was right-handed, he would "often switch" the spray gun to his left hand while painting. Following this letter, Dr. Tountas reexamined the employee and, on the basis of another EMG which proved abnormal, concluded that the employee had a 10 percent permanent partial disability of each hand. By a second letter to the attorney dated June 9, 1986, the doctor said he was now of the opinion that the carpal tunnel syndrome in both hands was job-related.

On May 22, 1986, the employee filed a claim petition. The compensation judge found that the employee had sustained *Gillette*-type injuries to both hands and wrists; that the disabling nature and compensable character of the employee's injuries were apparent at the time of the First Report of Injury filed on February 25, 1983; and that, therefore, the claim was barred under the personal injury clause of the statute of limitations. Under Minn. Stat. § 176.151(1) (1988), a claim for benefits for personal injury must be brought within "three years after the employer has made written report of the injury to the commissioner of the department of labor and industry * * *." Here the claim petition was not filed until some 3 months after the 3–year statute of limitations had expired.

On appeal to the Workers' Compensation Court of Appeals, the employee apparently took a new tack. He contended that before the compensation judge his injuries had been "inappropriately referred" to as a *Gillette*-type personal injury; that they should have been deemed an occupational disease; and that the claim petition had been timely filed within 3 years of acquiring knowledge of the cause of his injuries, as required by the occupational disease clause of the statute of limitations. *See* Minn.Stat. § 176.151(4) (1988) (an action for an occupational disease must be filed "within three years after the employee has knowledge of the cause of such injury and the injury has resulted in disability."). The WCCA concluded the employee could not recharacterize his injury as an occupational disease for purposes of the statute of limitations, and affirmed the compensation judge. By certiorari, the employee now comes to us.

Broadly stated, the issue is whether the employee's claim for a *Gillette*-type bilateral carpal tunnel syndrome is time-barred.

■ It would appear, at least for the purpose of the statute of limitations, that a

*Gillette* -type bilateral carpal tunnel syndrome is a personal injury. We find it difficult to characterize a condition resulting from "repetitive minute trauma," *Gillette*, 257 Minn. at 321–22, 101 N.W.2d at 205–06, as a disease. *Cf. Barcel v. Barrel Finish*, 304 Minn. 536, 232 N.W.2d 13 (1975). It is enough for our purposes here, however, to observe that for both personal injury and occupational disease, the statute of limitations begins to run when the employee has sufficient information of the nature of the injury or disease, its seriousness, and probable compensability. *Issacson v. Minnetonka, Inc.*, 411 N.W.2d 865, 867 (Minn.1987); *Bloese v. Twin City Etching, Inc.*, 316 N.W.2d 568, 571 (Minn.1982); 2B A. Larson, *The Law of Workman's Compensation* § 78.41(a) (1989). *See also Pease v. Minnesota Steel Co.*, 196 Minn. 552, 556, 265 N.W. 427, 429 (1936).

The limitation period does not begin to run from the time there exists a medical opinion on causation, but rather from the time the employee has sufficient notice from any source to put the employee on notice. *Issacson*, 411 N.W.2d at 867; *Bloese*, 316 N.W.2d at 571. Larson, however, states if an employee has consulted with a doctor and has been told his injury is not job-related, "he should not be expected or encouraged to overrule his medical advisors and file a claim anyway." 2B Larson, *supra* § 78.4(f) at 15–259 through 15–261 (footnotes omitted).

In this case the compensation judge found that "the disabling nature of the employee's injuries and his right to compensation were apparent at the time the First Report was filed." There is ample evidence to sustain this finding.

In the First Report of Injury, the employee's injuries are reported as a bilateral carpal tunnel syndrome; the nature of the injuries is stated as "irritations" and the object involved in the injury is said to be a "sprayer." At that time, the employee was given a brochure outlining his rights under the compensation act, and he promptly consulted an attorney to pursue a workers' compensation claim. The employee claims, however, he was misled by erroneous medical advice which should excuse his tardy filing. A careful reading of Dr. Tountas' report of March 21, 1983, however, discloses that the doctor was basing his opinion of no causation on the understanding that the employee usually and primarily painted with his right hand. Apparently this understanding was incorrect, as the employee painted also with his left hand. For whatever reason, the employee and his counsel waited well over 2 years before correcting the doctor's misunderstanding. This kind of inaction cannot be used by the employee to delay the running of the statute of limitations. Surely the doctor cannot be blamed for not knowing what the employee should have told him.[2]

Affirmed.

YETKA, Justice (dissenting).

I would reverse the Workers' Compensation Court of Appeals and hold that there is a compensable claim which is not barred by the statute of limitations. I would then remand to the compensation judge for determination of benefits.

The purpose of a statute of limitations is to give timely notice to the employer, who can then prepare a defense. The workers' compensation statutes require that notice of injury be given to the employer and that a claim for benefits be filed within 3 years after notice of the injury.

In this case, the employee gave notice, but he filed his claim 3 years and 3 months later. The claim was filed late because the

---

**2.** It is significant, we think, that on May 11, 1983, Dr. Tountas wrote a letter to the employee's attorney explaining that Jones had told him he used the spray gun primarily in the right hand, thus leaving the doctor unable to explain the carpal tunnel syndrome in the left hand. In the same letter Dr. Tountas asked for more information: " * * * I would need to know some details regarding the position of the wrist and hand * * *." On February 18, 1986, information on the patient's use of his left hand at work was sent the doctor. The doctor sent a new report on March 14, 1986, not responding, however to the causation issue. On May 22, 1986, the claim petition was filed. On June 9, 1986, Dr. Tountas sent his new opinion on causation.

doctor to whom the employee was referred by the employer would not, at the time of injury, draw a causal relationship between the injury and the job. It was only when the employee's lawyer, sometime later, urged the doctor to reconsider that the doctor gave a revised opinion. The doctor then found that the injury could have been and was caused by the job. The employee's lawyer had filed a claim within 6 months after requesting that the doctor reconsider the matter. The doctor's revised opinion, however, was not filed until 3 months after the 3-year statute had expired.

I believe that the result of the majority opinion will have a detrimental and costly effect on the entire workers' compensation system. It appears to me that it is unreasonable to find that the employee should not rely on a doctor's opinion regardless of who has hired that doctor. To hold otherwise would be to assume that the system is so adversarial that even a doctor's opinion is suspect because it can be bought on the market either to strengthen or weaken a case, depending on who engages that physician.

Here, the employer had notice of the injury. The injured employee went to the company's doctor, who said that there was no causal relationship between the job and the injury. If the employee and his attorney rely on that opinion, they should be entitled to bring their claim when the doctor revises his opinion. To hold otherwise, it seems to me, would have a deleterious effect on the system in three ways:

1. It will harm an employee not represented by counsel;

2. It will discourage an employee, whether or not represented by an attorney, from relying on any opinion of a company-selected doctor; and

3. It will cause injured parties to file a claim in every case of injury or disability, no matter how remotely connected to the job that injury or disability might be, in order to "play it safe," thereby increasing litigation and expense to the entire system.

This is so because, as the majority opinion says in quoting Larson:

Larson, however, states if an employee has consulted with a doctor and has been told his injury is not job-related, "he should not be expected or encouraged to overrule his medical advisors and file a claim anyway."

Majority Op. 4 (quoting 2B A. Larson, *The Law of Workman's Compensation* § 78.41(f) at 15–259 through 15–261 (1989)).

If the majority feels that the quote from Larson makes sense, why are we affirming this opinion? I would reverse for the reasons stated both in Larson and in this dissent. I would further find that, under these facts, the employee and his attorney did not have sufficient information to justify filing a claim at the time of the initial injury because they relied on the medical opinion of the company doctor, thereby bringing this case within the rules enunciated by this court in *Issacson v. Minnetonka, Inc.*, 411 N.W.2d 865 (Minn.1987), and *Bloese v. Twin City Etching, Inc.*, 316 N.W.2d 568 (Minn.1982).

POPOVICH, Chief Justice (dissenting).

I join in the dissent of Justice Yetka.

WAHL, Justice (dissenting).

I join in the dissent of Justice Yekta.